### G. W. JONES v. T. A. DOWLEN.

Decided May 4, 1901.

**State School Land—Curative Statute Construed.**

The Act of May 27, 1899, entitled "An act to validate and acquire title to public free school  *  *  *  lands sold prior to January 1, 1890," etc. (Acts 1899, page 259), is not, by virtue of the emergency clause thereof, restricted to cases where the defects of title arose exclusively with relation to the matter of actual settlement on the land, but extends also to cases of irregularity and defects in the application by virtue of which the land was awarded and sold.

Appeal from Randall.    Tried below before Hon. H. H. Wallace.

*Wilson & Kinder, B. Frank Buie,* and *Plemons & Veale,* for appellant.

*Thomas F. Turner,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—Appellant brought this suit of trespass to try title against appellee on the 15th day of August, 1900, to recover section 54, block K 14, public school land surveyed by the Tyler Tap Railroad Company, and also section 58, block K 14, public school land surveyed by G. B. & C. N. G. Railroad Company, each containing 640 acres, and both lying in Randall County. The defense was not guilty, and limitation of six months under the curative act hereinafter referred to. The case was tried by the court and judgment was rendered in favor of Dowlen, and Jones has appealed. We adopt the conclusions of fact filed by the district judge, and as the learned counsel for appellant raise in effect but two questions on this appeal, it is only necessary to state the facts out of which they arise.

The plaintiff Jones was entitled to recover the land unless the awards and sales under which Dowlen claims were valid, or must be held so under the curative act aforesaid.

The facts connected with these sales, so far as they are important to consider in this case, are as follows: The lands were not reclassified and appraised under the act which took effect August 20, 1897, until September 17, 1897, but were on the market as dry agricultural lands at $2 per acre, until on said latter date they were reclassified as dry grazing lands and put on the market at $1 per acre. Dowlen bought section No. 54 from Brown, the other, No. 58, from Hutson, on the 14th day of December, 1898, and immediately moved on No. 54, and made it his home and has resided there ever since, and has held the other as additional grazing land. Brown and Hutson were both actual settlers August 20, 1897, Brown on No. 54 and Hutson on a school section within a radius of five miles from No. 58, and on which day they each made application to purchase said sections respectively, Brown offering $1.50 per acre for No. 54, and Hutson $1 per acre for No. 58. Brown and Hutson paid the one-fortieth of the principal and executed their respective obligations for the balance, based on their respective bids, and the Commissioner awarded and sold the land to each according to his application, on October 9, 1897. Dowlen was accepted as a substitute purchaser, and he has paid all sums required of him by law, so that his account is, and at all times has been, in good standing with the Commissioner on said purchases, as were also the accounts of Brown and Hutson up to the time they sold to Dowlen.

Jones made his application for the two sections on June 14, 1900, based upon their classification as dry grazing lands, and offered $1 per acre.

From this statement it will be seen that the first question arising out of these facts is, whether the applications to purchase at $1 and at

$1.50 per acre, respectively, are valid offers which the Commisisoner was authorized to accept, when the lands were on the market at $2 per acre? The second and main question is, if the sales to Brown and Hutson were void, whether the act of the Legislature of Texas, entitled, "An act to validate and quiet titles to public free school, university, and asylum lands, sold prior to January 1, 1899; to provide for patents, and to prescribe limitation for bringing suits for the recovery of such land," approved May 27, 1899, made them valid?

It is claimed that the first question has been settled in the case of Gracey v. Hendrix, 93 Texas, 26, where our Supreme Court held an application, apparently similar, to be void, but if it were necessary we could easily distinguish that case from this. We are, however, so clear that the second question must be determined in favor of the appellee that we will not undertake to discuss the first.

The act under consideration is as follows: "Section 1. That any applicant who has, prior to the 1st day of January, 1899, made application to purchase public free school, university, or asylum lands, and within six months after the date of such application to purchase made actual settlement and first payment thereon and executed his obligation for the balance of the purchase money, and the said land has been awarded to such applicant by the Commissioner of the General Land Office, under the several acts of the Legislature relating to the sale of such lands, and the said award and the account as to interest payments on such land is in good standing, such award and sale is hereby validated, and the Commissioner of the General Land Office shall issue to such purchaser, his heirs and assigns, patent thereto, upon the payment of the purchase money, both principal and interest, together with patent fees, and upon satisfactory proof that all taxes have been paid upon such land, and that such land has been occupied for three years by said applicant or his vendee, after the date of his application; provided, that the provisions of this act shall not in any manner disturb the vested rights of those claiming an adverse claim or title by reason of settlement and application to purchase as against the purchaser to whom the same was awarded by the Commissioner of the General Land Office; and provided further, that all persons claiming, by reason of settlement and application, to purchase an adverse title or rights to such land as against the purchaser to whom the same is awarded by the Commissioner of the General Land Office shall begin his suit to recover such land within six months after this act takes effect, and not thereafter.

"Sec. 2. The fact that there are now many settlers upon and owners of school lands who were not actual settlers thereon, as the term is construed by the courts, before making their application to purchase, and who have been forced to leave their lands by the circumstances beyond their control, and that such condition is promotive of claim jumping, strife, and feuds, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this act go into effect from and

after its passage, and it is so enacted." This act was approved May 27, 1899, on which day the Legislature adjourned, and it took effect August 26, 1899.

The meaning of this act is, that any applicant who, prior to January 1, 1899, had made application to purchase any of the lands named, and to whom the Commissioner has awarded same, and who, if he had not already done so, shall, within six months after the date of his application, make actual settlement on the land, and shall make the first payment and execute his obligation for the balance of the purchase money, according to the price as fixed by the Commissioner, and whose account, as to payments required by law, shall be in good standing, such award and sale shall be validated, whatever may have been the irregularities or defects in his application or in any of the proceedings by which he obtained the award, except in cases where the rights of others to the land had or may become vested before the act takes effect, and in case of such vested rights, suit must be commenced against the party to whom the award has been made to recover the land, within six months after this act takes effect. The other portion of the act relates to the right to receive a patent for the land, and need not be discussed here.

This construction is clearly in accord with the title of the act, and the reasons given in section 2, why the constitutional rule should be suspended and the act passed at once under the emergency clause of the Constitution, can not and ought not in any manner to restrict or limit the meaning of the act as plainly expressed in its body.

The main contention of appellant, therefore, that the act was intended to cure only the defect of actual settlement must be overruled, and the judgment in favor of appellee be affirmed.

*Affirmed.*

Writ of error refused.