## WALTER WATSON ET AL. v. T. C. WHITE.

Decided June 15, 1901.

**1.—State School Land—Sale to Minor.**

A sale of State school land duly made in 1899 to an actual settler, a minor 18 years old, is valid, notwithstanding the purchaser's minority. Constitution, article 7, sections 2, 4; article 14, section 6, and Sayles' Civil Statutes, articles 4218f, 4218j, construed.

**2.—Cases Distinguished, etc.**

Walker v. Rogan, 93 Texas, 248; Wurzbach v. Burkett, 60 Southwestern Reporter, 590, distinguished; and Weatherford v. McFadden, 21 Texas Civil Appeals, 260, adhered to.

**3.—State School Land—Application—Official Seal.**

Where the oath required by the statute to an application to purchase school land was duly made before the proper officer, and he failed to affix his official seal thereto, but the seal was affixed by him after another party had filed an application for the land, such failure to affix the seal did not affect the validity of the first application.

Appeal from Palo Pinto. Tried below before Hon. J. S. Straughan.

*H. E. Bradford,* for appellants.

*W. H. Penix* and *Stevenson & Ritchie,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—Appellee, T. C. White, applied to purchase the section of school land in controversy as an actual settler, October 26, 1899, complying in all respects with the law providing for the sale of such lands, but his application was rejected by the Land Commissioner because of the previous award, on September 25, 1899, to appellant Watson, upon his application filed in the General Land Office, July 24, 1899, to purchase it as additional land to the quarter section of school land which the evidence tended to show was then occupied by him as a home, and had been since he purchased it in July or August of the preceding year from one Duff, to whom it had been duly awarded as an actual settler May 17, 1897, and who remained an actual settler thereon until the substitution in the General Land Office, August 10, 1898, of Watson as purchaser from the State. This suit was consequently brought by White against Watson to recover the section so purchased by Watson as additional land, and resulted in a judgment in

favor of White, the court instructing the jury that the award to Watson was bad because he was under 21 years of age when it was made. He was, however, over 18, both at the date of his purchase from Duff of the home quarter section, and at the date of his application to purchase the section in controversy, and there was evidence tending to show that his father had long prior thereto emancipated him, and also that his disability of minority had been removed by decree of court, and the sale thereafter ratified by him, but this manumission and the ratification were subsequent to White's application.

The validity of a sale of public school land to a minor over 18 years old, to whom the Commissioner of the General Land Office had awarded the land upon his application to purchase as an actual settler, was sustained by this court in Weatherford v. McFadden, 21 Texas Civil Appeals, 260. Again in O'Keefe v. McPherson, 61 Southwestern Reporter, 534, the same question came before us, and while the appeal was disposed of on another ground we took occasion to express our approval of the decision in Weatherford v. McFadden, which we still think should be adhered to until a decision directly in point to the contrary is made by the court of final jurisdiction. It may be that that decision was in effect overruled by the opinion of the Supreme Court in Walker v. Rogan, 93 Texas, 248, and by the refusal of writ of error in Wurzbach v. Burkett, 60 Southwestern Reporter, 590; but in neither of these cases was the right of an actual settler to purchase school land at issue. In Walker v. Rogan, which was a mandamus proceeding to compel the Commissioner of the General Land Office to issue patent on a purchase of school land made under the Act of 1879, as amended in 1881, in the name of a girl under 12 years of age, of whose infancy the Land Commissioner was ignorant, Justice Williams used the following language: "No qualifications are prescribed for purchasers, as that they shall be actual settlers, such as are found in subsequent statutes. If minors are prohibited from buying, it is by implication arising from the nature of the acts and obligations required of purchasers."

Wurzbach v. Burkett, being a controversy over the right to purchase detached land, was also a case in which the law authorized a sale of school land without actual settlement. There were three parties to the controversy, and the report of the case fails to show who applied for the writ of error, or upon what ground it was denied. We feel free, therefore, to consider the question now before us (for the third time) on its merits.

The Constitution of 1876 provided for the disposition of the public domain of Texas, setting apart one-half thereof for educational purposes, to be sold "under such regulations, at such times, and on such terms" as the Legislature might prescribe, and donating "to every head of a family without a homestead," 160 acres upon condition of settlement and occupancy for three years, and to every single man "eighteen years of age and upwards" 80 acres upon the same condition. Const. art. 7, secs. 2, 4, and art. 14, sec. 6. It also restricted the sale of certificates for

land to actual settlers (article 14, section 4), and protected the prior right of actual settlers to purchase the school lands belonging to the counties. Art. 7, sec. 6.

The unmistakable purpose so manifested in the organic law to favor the actual settler had long been a settled policy in the disposition of the public lands of Texas. It was made a part of the Constitution of the Republic that every head of a family was entitled to one league and labor of land, and ever single man of the age of 17 and upwards to one-third of a league. Under the Constitution of 1845, and subsequent Constitutions, pre-emption laws were enacted to enable both married and unmarried persons to acquire homes out of the public domain by actual settlement, in some of which were restrictions as to age. Pasch. Dig., art. 7058; Rev. Stats., 1879, art. 3924. These laws received a liberal construction in the interest of the settler. Johnson v. Eldridge, 49 Texas, 523; Summers v. Davis, 49 Texas, 554. The Constitution of 1869 contained a clause in all respects similar to that quoted above from the existing Constitution, except that single men entitled to the donation were required to be 21 years of age.

Giving to these constitutional and statutory provisions a reasonable construction, to say nothing of a liberal one in furtherance of a well known public policy, we think it must be conceded that the rights thus bestowed upon heads of families and pre-emption settlers were never intended to be affected by the ages of such persons, except in those instances, and then only to the extent specified, in which restrictions as to age were made. That is to say, the head of a family under the Constitution of the Republic, without reference to age, was entitled to a league and labor of public land, as was also a pre-emption settler and homestead donee to the quantity of land allowed under subsequent laws and constitutional provisions where restrictions as to age were not inserted at all, or did not in terms apply. If a contrary construction was ever placed upon these constitutional and legislative provisions we are not aware of it.

What was said by Chief Justice Hemphill in Lockhart v. Republic, 2 Texas, 128 (in which Justice Wheeler was marked as not sitting), was with reference to a "single man" who had emigrated to Texas in 1829, and sought to acquire land under the colonization of 1825.

In the construction of the statutes of the United States providing for the disposition of public lands, we understand it to have been the accepted view and uniform practice from the beginning to allow minors who were heads of families to acquire such lands, the statute (section 2259) reading: "Every person, being the head of a family, or widow, or single person, over the age of twenty-one years, * * * who has made or hereafter makes a settlement in person on the public lands subject to pre-emption, and who inhabits and improves the same, and who has erected or shall erect a dwelling thereon, is authorized to enter with the Register of the Land Office for the district in which such land lies, by legal subdivisions, any number of acres not exceeding one hundred

and sixty, or a quarter section of land, to include the residence of such claimant, upon paying to the United States the minimum price of such land." See Bray v. Colby, 2 Land Dec. Dep. Int., p. 82. It will hardly be contended, therefore, that the framers of section 6, article 14, of the present constitution, above quoted from, meant to make a donation to a single man under age, and at the same time to deny a donation to one of the same age having the care and responsibility of a family.

While the constitution, in authorizing the Legislature to provide for the sale of the public school lands, did not expressly provide that preference should be given the actual settler, and that every actual settler the head of a family, or single man "eighteen years of age or upwards," should have such preference, it is not reasonable to suppose that the State intended, in the disposition of the public domain, to *give* a home to one actual settler under age and at the same time to *refuse to sell* one to another actual settler, equally meritorious, because of his being under age. In leaving the regulations and terms of sale to the Legislature the Constitution may have made it possible for that body to place the State in that anomalous position, yet unless the language employed in the act providing for the sale of the school lands compels such a holding, one more in harmony with the general policy should be adopted. The proposition is elementary that the whole doctrine of the disability of minority is founded in the law's desire to favor the minor. Why then, since we have unmistakable evidence that the framers of the Constitution intended to favor him in the matter of acquiring a home out of the public domain,. should we conclude that "by implication" the Legislature did not intend, in· accordance with an etsablished State policy, to do likewise in providing for the sale of the public school lands? The only argument put forth to sustain such construction by implication is founded upon the requirement of the law that he execute a written obligation to the State,. which, however, is but the usual form of a sale on a credit. That it has. never been the policy of the State to enforce a school land obligation as. a personal liability, but only to declare a forfeiture of the sale for non-compliance with the obligation, or to look to the land alone, until fully paid for, as the school fund, is well known. The language employed by he Legislature is admittedly broad enough to include a minor, for, in declaring the land subject to sale, "but to actual settlers only," except as provided therein, it gives the preference right to purchase to "any person" who "desires to purchase the land for a home, and has in good faith settled thereon." Sayles' Civ. Stats., arts. 4218f, 4218j. This evinces the same partiality for the homeseeker and actual settler as that found in the Constitution and previous legislation, and even greater, because it contains no restriction, such as is there found, as to the age of an unmarried minor, but if the applicant to purchase has the capacity to become an actual settler, without reference to age or other condition,. and does settle on the land as a home, the law is satisfied. He is the very person to whom the Commissioner, by whom the law requires "all sales shall be made," is authorized to sell. Id., art. 4218j. To secure

the right thus tendered him he has only to comply with the law, which exacts, among other things, the execution of an obligation or promise in writing to pay the purchase money with interest. If he has the mental capacity to do this, no reason is seen why the Commissioner may not, in accordance with the regulations of his office fixing eighteen, or even a less number of years as the minimum age, award him the land, and if the Commissioner has done so, the presumption arises that he had the requisite capacity. The argument that the Legislature never intended to authorize sales to minors because of the principle which allows that class of persons to avoid their contracts may be a good one when applied to the construction of statutes allowing persons generally and without qualification to purchase school lands, but proves too much when applied to the construction of the act (that of 1895, as amended in 1897) under which the sale in question was made, giving the preference right to an actual settler, for under that law the obligation of every purchaser required to be an actual settler, whether adult or minor, was for three years after its execution voidable at the pleasure of the maker. Voluntary abandonment of the land at any time before the three years occupancy was complete made it the absolute duty of the Land Commissioner under that law to declare a forfeiture, and prevented the issuance of patent, as the requisite proof of occupancy could not be made, and under previous acts, as well as under that recently passed, itself worked a forfeiture of the sale. The obligation of a minor over 18 theretofore, if not theoretically so, is certainly as good practically as that of any other purchaser, since he will have attained his majority so to bring him to a final election at or before the expiration of the time within which any other purchaser might by abandonment force a termination of the contract. The Supreme Court of California, in Donner v. Palmer, 31 California, 500, which decision was approved by the Supreme Court of the United States in Palmer v. Law, 98 United States, 1, 25 L. Ed., Book 60, in overruling the contention that grants of lands to infants were invalid "because they were incapable in law of taking upon themselves the performance of the conditions subsequent," used this language, which seems pertinent here: "Concede the incapacity of infants to make binding contracts, it does not follow that they could not or would not perform them. They might perform the conditions themselves, or others might. The only consequence of a nonperformance was a possible forfeiture of the estate. Even adults were not bound to perform them in the sense that they could be made to do so. It was a matter resting entirely with themselves whether they would improve the lot or not. They might or might not, and so might an infant. If not, the government had its remedy by denouncement in the latter case as well as the former."

As to the objection that a minor can not convey land, and therefore that in authorizing the original purchaser of school land to convey the same to another the Legislature must have had in contemplation a sale to one legally competent to make such a conveyance, it is perhaps sufficient to say that if in the first instance the Commissioner was author-

ized to make a sale to a minor, no reason is perceived why the same power that authorized the original sale might not authorize the transfer, the superior title remaining in the State. On the other hand, the fact that the land may be transferred by the original purchaser to any person he may see fit to select as his vendee, whether solvent or insolvent, and the obligation of such vendee be substituted for its own, indicates that no importance whatever was attached by the Legislature to the obligation as a personal liability.

It has been held that a married woman is authorized to purchase school land as an actual settler, and yet she can not ordinarily bind herself personally by executing an obligation in the form of that prescribed by the act in question. Anderson v. Neighbors, 61 S. W. Rep., 145, 62 S. W. Rep., 417. The explanation given of the Supreme Court's action in refusing a writ of error in the case just cited seems to us hardly sufficient to entirely reconcile that ruling with the contention that the Legislature did not intend in any case to authorize a sale to one not legally competent, ordinarily, to execute a binding obligation, for according to this contention, as we understand it, the class of persons given the right to purchase did not include those whose applications might be made effectual by the acts of others in creating a liability not created by the written obligation; as for instance, in the case just cited, where the conduct of the husband creating a community debt was held to make good the wife's application, but only those were contemplated who had the legal capacity to execute and make absolutely binding the written obligation made essential by the law to the validity of the purchase. In other words, according to the contention against the validity of a sale to a minor, the terms of sale prescribed by the Legislature, and not others which the courts might consider just as good, were those alone upon which the Land Commissioner was authorized to sell, from which is deduced the inference that no sale was contemplated except to an applicant capable in law of a personal compliance with such terms, the question being one of legislative intention. Indeed, there seems to us to be rather more difficulty in sustaining a sale of school land to a married woman, whose executory contracts are void, than to a minor, whose contracts are merely voidable.

What was said by us in O'Keefe v. McPherson, supra, as to the usage of the General Land Office in selling these lands to minors over 18 years of age, and the implied recognition of this by the Legislature, need not be repeated, but it is perhaps worthy of mention that as far back as 1883 the Legislature seemed to have in contemplation sales of school lands to both minors and married women, as will be seen from the following quotation from the forfeiture clause of the Act of 1883, page 88, also found in the Acts of 1885, page 14: "And no defaulting purchaser or those claiming under him shall evade or avoid the effects of such forfeiture at once by reason of any statute or law which, for coverture, infancy, or the like, would otherwise give them additional time for the payments or action," etc.

Ascribing therefore to the Legislature a purpose in the enactment of our school land laws in harmony with what stands out so conspicuously in the Constitution itself, as well as in the antecedent land history of Texas, as the policy of the State to favor rather than to discriminate against the actual settler, and recognizing the importance of upholding a usage of the Land Office of long standing and affecting numerous titles, and finding that no detriment can come either to the State or to any purchaser of school lands by construing an actual settler, of whatever age, to mean an actual settler, to which class alone, without exception as to age, the school lands are subject to sale,—the only exception in the statute relating to detached lands,—we feel unwilling to hold that "by implication" the Legislature intended to deny such actual settler the valuable right of acquiring such land as a home, with the requisite additional grazing land, merely because he had not yet attained his majority, especially in a case where the evidence tends to show emancipation. This conclusion leads to a reversal of the judgment against appellant Watson.

We next consider the appeal of Lula D. Lasater, who, with her husband, intervened in the court below, claiming the land under an application to purchase it as additional land, made subsequent to that of Watson, but prior to that of White. She applied as the owner in her own separate right and as occupant with her husband of other land, her husband joining her in the execution of the obligation to the State. She made the "oath" required by article 4218f, but the officer before whom it was made by oversight neglected in certifying thereto to affix his seal of office, which, however, was done after the papers were filed in the Land Office, but subsequent to the filing of appellee's application. The court instructed the jury, that "the application and obligation of Lula D. Lasater  *  *  *  and other evidence of the said interveners" would not warrant a recovery in his behalf.

We are of opinion that the failure of the officer to use his seal in certifying to the oath in the first instance, which was but a formal defect, was not fatal to the validity of the application. A substantial compliance with the law on the part of the applicant is all that the law requires. Joyce v. Sisk, 62 S. W. Rep., 960, and cases there cited. If there was any other defect in the papers it has not been called to our attention. It is insisted, however, that there was collusion between the Lasaters and the father of Watson, and that the husband of Lula D. Lasater withdrew the first payment after her application was rejected. The evidence as to collusion was not such as to warrant the court in withdrawing the issue from the jury, and the testimony of Mrs. Lasater tended to show that the money had been withdrawn, by the husband, who seems to have wanted it for Christmas purposes, without her knowledge of consent. It was afterwards returned to the State Treasurer. We are inclined, therefore, to the opinion that the issue of abandonment also should have been left to the jury, if indeed, the pleadings can be said to have raised that issue, for appellee's answer to the plea of intervention

contained a plea of estoppel, but no other special defense. Townes on Pleading, pp. 425, 426, and cases there cited.

The entire judgment will therefore be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.