## JOHN R. JOHNSON v. ROBERT T. BIBB.

### Decided May 16, 1903.

**1.—School Land Purchase—Forfeiture—Reinstatement**

The Commissioner of the General Land Office may set aside an unauthorized and inadvertent attempt of his to forfeit a purchase of State school land and the payments thereon, for an abandonment, where there was no abandonment in fact.

**2.—Same—Sale to Minor—Validation.**

Where school land was sold in 1898 to a minor actually settled thereon, and he sold it to another person who became the substitute purchaser in the General Land Office and settled on the land, such sale to the minor, if void at all, was validated by virtue of chapter 150, General Laws 1899, p. 259.

**3.—Same—Substitute Purchaser—New Sale.**

Since the statute provides that when its terms have been complied with the substitute vendee of school land "shall become the purchaser direct from the State," such substitute sale is to all intents and purposes a new sale. Rev. Stats., art. 4218k.

**4.—Same—Payments on Former Sale Credited.**

The Land Commissioner and State Treasurer having, however, recognized the conveyance from the original vendee to the substitute purchaser as at least having the effect of an equitable assignment of the benefit of the original vendee's first payment of purchase money to the State and credited the substitute

purchaser therewith, such action will be upheld as consonant with justice and contemplated by the statute, and it was not necessary for such first payment to be made again.

Appeal from the District Court of Jones. Tried below before Hon. N. R. Lindsey.

*John B. Thomas* and *C. H. Steele,* for appellant.

*Thomas L. Blanton* and *Theodore Mack,* for appellee.

CONNER, CHIEF JUSTICE.—On August 6, 1901, appellee instituted this suit in the ordinary form of trespass to try title to recover from. appellant school sections 94 and 100, situated in Jones County, and upon a trial before the court without a jury obtained judgment in his favor.

At appellant's request the court filed conclusions of fact which we think are fully sustained by the evidence, and which are hence adopted entire. From the findings it appears that said sections had been duly sold, the sale forfeited, and the land reclassified as dry grazing land and appraised at $1 per acre prior to May 19, 1898, and that on that day B. B. Brockett, a minor over 18 years of age, in due form applied to purchase section 94 as an actual settler thereon, and section 100 as additional to his home section. He executed the proper obligations, and the proper amount as first payment was transmitted to and received by the State Treasurer, and the lands were awarded to him. On December 27, 1898, Brocket in due form conveyed both sections to one C. Pool, who forthwith became an actual settler on section 94, and who, on March 6, 1899, in due manner and form as required by Revised Statutes, article 4218k, became the substitute purchaser from the State. On September 19, 1899, Pool reconveyed to Brockett, and he, on the 28th day of the same month, likewise became a substitute purchaser from the State. On April 9, 1900, Brockett conveyed both sections to the appellant, John R. Johnson, the latter, on the day of sale, making actual settlement on section 94 as his home section. On August 9th thereafter Johnson made in due form an original application to purchase 94 as a home, and 100 as additional, but this was rejected by the Commissioner of the General Land Office on the ground of the previous sale to Brockett. Appellant thereupon filed in the General Land Office his conveyance from Brockett, which had been duly recorded in Jones County, and at the same time applied to purchase said lands as a substitute purchaser under Brockett. His obligations and applications bore date of April 9, 1900, and were in due form, but the applications were verified on January 25, 1901. These applications were granted, and appellant, on January 28, 1901, was in due form and manner entered upon the record of the Commissioner of the General Land Office and upon the account in the State Treasurer's office as the substitute pur-

chaser from the State. It also appears "that the Commissioner of the General Land Office wrote, in red ink, the following across the face of each of the two applications and obligations of B. B. Brockett that are dated September 9, 1899, to wit: 'Land forfeited for abandonment, 1-22-1901. Charles Rogan. Commissioner.' 'Land reinstated 2-7-1901. Charles Rogan, Com'r.' And that the Land Commissioner made the following indorsement on the account kept in his office, with the said purchasers, under the said B. B. Brockett purchase of said land, to wit: 'Canceled 1-22-1901.' 'Reinstated 2-7-1901.' And that the State Treasurer made the following indorsement on the account kept in his office with the said purchasers, under the said B. B. Brockett purchase, to wit: 'Canceled. Abandonment 1-22-1901.' 'Reinstated 2-7-1901.' "

Upon the entry of forfeiture January 22, 1901, the county clerk of Jones County was by letter notified thereof, and that the land was on the market as dry grazing land at $2.50 per acre, which letter was received by said clerk and filed in his office January 25, 1901. By letter of February 7, 1901, the clerk was notified by the Commissioner that the sale to Brockett had been reinstated and the land taken off the market. This letter was received by the clerk February 9, 1901, the clerk changing his records in accordance with instructions upon the respective dates received as stated. It also appears that neither Pool nor appellant transmitted to or tendered the State Treasurer one-fortieth of the purchase money at the time of the respective substitute sales to them, but the one-fortieth of the purchase price paid by B. B. Brockett at the time of the original award to him and the annual installments of interest under appellant's claim of title have all been paid to and accepted by the State Treasurer, and said accounts are, and at all times since May, 1898, have been, in good standing in the Land Office and in the office of the Treasurer, save as shown by the indorsements hereinbefore quoted. Appellant made due proof of three years occupancy by him and his vendors of section 94, which was received and filed in the General Land Office May 22, 1901, and due certificate thereof issued September 24, 1902.

Appellee's title had its inception on the 17th day of May, 1901, at which time he became an actual settler on section 100, and in due form applied to purchase it as his home and section 94 as additional, at the appraised price of $2.50 per acre. At the time he made his applications and obligations, which in all things were regular in form and for the proper amounts, appellee caused them to be filed with the county clerk of Jones County and paid such clerk one-fortieth of the purchase price as applied for, and the applications and obligations were received and filed in the General Land Office on the 22d day of May, 1901, but were rejected by the Commissioner for the reason that said land had been sold and appellee's tender of purchase price and one year's interest had been refused by the State Treasurer.

The court found that Brockett was an actual settler in good faith on section 94 on May 17, 1898, and that no abandonment thereof ever took place, but concluded nevertheless that the Commissioner's said indorsement of forfeiture operated as such, and that his attempted reinstatement was unauthorized, and hence that the land was on the market at the date of appellee's application, and that appellee was therefore entitled to recover.

Appellee, by cross-assignment, insists that the evidence fails to support the court's findings to the effect that the accounts in the Land and Treasurer's office of Brockett, Pool and appellant Johnson remained in good standing, and that the land in controversy has never been abandoned by either of the parties named. Upon a careful review of the evidence, however, we conclude that the evidence, while conflicting, is sufficient to support and establish the facts as found by the trial court and as hereinbefore stated.

Upon the facts stated we conclude, as appellant assigns, that the court erred in his conclusion of law and in rendering judgment for appellee. The law operating at the time empowered the Commissioner of the General Land Office to forfeit the land and all payments made to the State thereon only for nonpayment of interest and when the purchaser had failed to reside upon and improve in good faith the land purchased. Rev. Stats., art. 4218l. The power is dependent upon the fact. Where the fact of abandonment does not exist, the power to forfeit on this ground can not exist. The court, upon sufficient evidence, as we think, found that no abandonment of the land in controversy had occurred on January 22, 1901, when the Commissioner attempted to forfeit it, and the attempt therefore had no force or effect whatever. He hence could certainly cancel and set aside, as he did do, February 7, 1901, the unauthorized, inadvertent attempt to forfeit. See Moore v. Rogan, 96 Texas, 375, 73 S. W. Rep., 1.

It is insisted, however, that the original sale to B. B. Brockett on May 19, 1898, was a nullity because of his minority. If, under the law of that sale, we were disposed to concede this, which we do not find necessary to do (see Watson v. White, 26 Texas Civ. App., 442, 64 S. W. Rep., 826; O'Keefe v. McPherson, 25 Texas Civ. App., 313, 61 S. W. Rep., 534), it does not follow that the land was upon the market at the date of appellee's applications to purchase. Some time prior to this date the Legislature passed an act which, under the facts of Brockett's settlement, payments and occupancy, we think validated the original Brockett sale. See Gen. Laws 1899, p. 259; Jones v. Dowlen, 26 Texas Civ. App., 253, 63 S. W. Rep., 938; Strickel v. Turberville, 28 Texas Civ. App., 469, 4 Texas Ct. Rep., 779. This view is not, as we think, necessarily in conflict with the case of Spence v. Dawson, 5 Texas Ct. Rep., 825, and if not, and if the original sale to Brockett was either valid when made or made so by the act cited, it certainly follows that his transfer to C. Pool and Pool's substitution as a purchaser on March

6, 1899, which, in that event, was in all respects regular and in compliance with Revised Statutes, article 4218k, on that subject, were valid, and effectually took the land off the market. If the substitute purchase of Pool was valid, as we think it was, the fact that he thereafter reconveyed the land to Brockett, and thereupon abandoned the land, can avail appellee nothing in the absence of a forfeiture of the substitute sale therefor. O'Keefe v. McPherson, supra. If it be said that Pool's sale to Brockett and the substitute sale by the State to Brockett on September 28, 1899, were both void by reason of Brockett's then minority, such void acts would not have the effect, ipso facto, of abrogating the previous sales and replacing the land upon the market. The substitute purchase by appellant Johnson on January 28, 1901, followed prior to the acquisition of any right in appellee. This sale of itself, if valid, would render all preceding sales and transactions immaterial in so far as appellee's rights are concerned, and we feel unable to assign any good reason why the substitute sales to both Pool and appellant Johnson were not valid. The statute cited (article 4218k) provides that when its terms have been complied with the substitute vendee "shall become the purchaser direct from the State, and be subject to all the obligations and penalties prescribed by this chapter, and the original purchaser shall be absolved in whole or in part, as the case may be, from further liability thereon."

It is in such case to all intents and purposes a new sale, upon substantially the same terms and conditions as if the sale was an original one, save that actual settlement seems not to be required where three years occupancy has already been had and proof of that fact made, and save that the substitute applicant is not by said article required to make the first payment, as in case of an original purchaser. Both Pool and Johnson, as to actual settlement, forms and substance of applications, obligations, etc., complied strictly with the law. Neither, however, paid the State Treasurer one-fortieth of the purchase money. But the Commissioner and State Treasurer recognized the several conveyances to them as at least having the effect of an equitable assignment of the benefit of Brockett's payment of the one-fortieth of the purchase price that would otherwise have been required, and consequently credited Pool and appellant respectively therewith, and we think such action consonant with justice and contemplated by the statute, and that it should be upheld. In the case of Spence v. Dawson, supra, so urgently relied upon by appellee, the Supreme Court was considering the application held invalid in that case as an application to become an original purchaser of additional lands when it declared the application invalid for the failure to make the first payment. As an application to become a substitute purchaser it was held invalid on another ground, to wit, on the ground of nonsettlement.

In view of the foregoing views we pretermit as unnecessary a determination of the effect of the facts which seem of weight, that appel-

lee's settlement on section 100 was but five days prior to the expiration of three years continuous occupancy of section 94 by appellant and his vendors, and that due proof of such continued occupancy was received and filed in the General Land Office on the same day as was appellee's applications to purchase, and that it was not shown that such applications were in fact filed prior to the filing of such proof.

We conclude that the land in controversy was not upon the market for sale at the time of appellee's settlement and applications to purchase. and that the judgment should have been for appellant.

The judgment is reversed and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.