PERRY v. MARTIN. (No. 5546.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 1, 1915. Rehearing Denied Dec. 22, 1915.)

1. PUBLIC LANDS ⚖=>178 — TEXAS — SCHOOL LANDS—ACTIONS—DEFENSES—ESTOPPEL.

Plaintiff, who had received a deed from settlors and himself settled on school lands, and through his predecessors in interest and himself had completed the occupancy and received his certificate therefor, was not estopped to claim title as against the defendant to whom the patent had been issued, by his knowledge of an agreement of the defendant with his former partner that the partner should acquire the land and deed it to the defendant, since, to acquire it, he must have sworn that he was taking it for himself, and no one else; the contract therefore being contrary to law, fraudulent, and not enforceable.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ⚖=>178.]

2. PUBLIC LANDS ⚖=>178 — TEXAS — SCHOOL LANDS—RIGHTS OF PURCHASERS.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5436, providing that persons having settled on public lands may sell them, whereupon the purchaser must complete the occupancy and otherwise perform the acts required by statute of an original purchaser, making application and filing his own obligation, a conveyance by an original settlor does not vest in the grantee any title to the land, but merely gives him the right to make application for the land, so that one who derived the right to apply from a settlor, though with knowledge of a claim of another, and thereafter perfected his right by application and occupancy, could assert title as against such claimant to whom the patent was wrongfully issued.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ⚖=>178.]

3. PUBLIC LANDS ⚖=>173 — TEXAS — SCHOOL LANDS—TITLE—TIME FOR CONTEST.

Under Rev. St. 1911, arts. 5458, 5459, providing that one claiming an interest in school or any public lands which have been sold or leased must sue within one year to assert his right, and that failure to sue within that time is conclusive evidence that the sale complied with statutory requirements, where one purchased from a settlor his right to school lands and perfected his title according to statutory requirements, but received no patent, his title was good as against another claimant, who had failed to sue within one year, though he held a patent to the land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ⚖=>173.]

Error from District Court, Kinney County; W. C. Douglas, Judge.

Action by H. G. Martin against Tom Perry. From a judgment for plaintiff, defendant brings error. Affirmed.

Frank Lane, of Brackettville, and Jones & Thurmond, of Del Rio, for plaintiff in error. Martin & Martin, of Uvalde, and Sanford & Wright, of Eagle Pass, for defendant in error.

MOURSUND, J. Defendant in error, H. G. Martin, on September 13, 1913, sued Tom Perry, plaintiff in error, in trespass to try title, seeking to recover 1,287⁷/₁₀ acres of school land, consisting of one entire section and portions of three others, in Kinney county. Plaintiff in error answered by plea of not guilty, the three-year statute of limitations, the one-year statute of limitation, and, specially, a plea that plaintiff was equitably estopped from claiming the lands sued for. The nature of this plea will be stated fully in disposing of the assignments of error. Judgment was rendered by the court in favor of Martin. The four entire sections of school land were originally purchased from the state by F. M. Johnson. One section was awarded November 23, 1905, and the other three on December 9, 1905. He sold the same to J. H. Walker before the completion of the three years' occupancy. Walker became substitute purchaser, and before completing the three years' occupancy sold said land to O. S. Harper. O. S. Harper became substitute purchaser, and sold the land to A. B. Harper before completing the three years' occupancy, and said A. B. Harper became substitute purchaser. On December 23, 1908, in a suit in the district court of Kinney county by Tom Perry against A. B. Harper, a judgment was rendered in favor of Perry for the land in controversy in this case, and on January 18, 1909, in pursuance of the terms of the judgment, A. B. Harper and wife conveyed such land to Tom Perry. At that time, however, the three years' occupancy of the land had not been completed. Said deed was filed for record on March 19, 1909. Perry did not become substitute purchaser nor settle upon the land. On August 31, 1909, A. B. Harper conveyed the four entire sections to H. G. Martin, defendant in error, but at that time the three years' occupancy had not been completed. On October 25, 1909, A. B. Harper and wife conveyed the four sections to H. T. Coston, and at that time the three years' occupancy had not been completed. Coston filed his applications, affidavits, and obligations in the land office, became substitute

purchaser, and settled upon the land. On January 29, 1910, Coston and wife conveyed said four sections to H. G. Martin, and at that time the three years' occupancy still remained incompleted. On July 18, 1910, Coston filed in the land office a partial proof of occupancy, and on the same day Martin filed his applications, affidavits, and obligations and became substitute purchaser, settled upon the land, and completed the three years' occupancy. On August 23, 1910, Martin filed his proof of occupancy, and on August 29, 1910, certificate of occupancy was issued to him, which was filed and recorded in the Deed Records of Kinney county on September 5, 1910. On March 14, 1911, the portions of the four sections in controversy in this suit were patented to Tom Perry.

[1] The plaintiff in error's first contention is that the court erred in excluding evidence in substantiation of his special plea of estoppel, the substance of which is as follows: That plaintiff in error and A. B. Harper were partners in the ranching business, and during the existence of such partnership they purchased from O. S. Harper the four entire sections of school land, of which the lands in controversy constitute a portion; that the deed was taken in the name of said A. B. Harper, with the understanding that he was to complete the three years' occupancy and hold the title for the benefit of the firm until such occupancy was completed; that afterwards plaintiff in error sued Harper for dissolution of the partnership and partition of the property, and a board of arbitration was agreed upon to partition the property, which board awarded to plaintiff in error the lands in controversy, and such award was accepted by plaintiff in error upon the express agreement and understanding that said Harper would continue his occupancy until the completion of the three-year period, and file in the land office a certificate of such fact; that judgment was entered in accordance with such award, and a quitclaim deed executed by Harper and wife to appellant pursuant to such award and judgment; that said Harper, being desirous of disposing of the portions of said sections of school land awarded to him, conveyed to Coston the entire sections, after fully informing him of the understanding and agreement existing between plaintiff in error and said Harper, and upon the understanding and agreement that Coston would complete the occupancy for the benefit of plaintiff in error as well as himself; that Coston and his wife made their conveyance to defendant in error, Martin, after giving him the same information given Coston by Harper and upon the same understanding and agreement that the portion of the sections in controversy was conveyed only for the purpose of enabling Martin to complete the three years' occupancy for plaintiff in error's benefit. This testimony would show that whatever title was acquired by Martin to the land in controversy was acquired under an agreement to hold the same in trust for Perry, but the objection interposed was to the effect that the agreement throughout was illegal, and therefore the courts should not give effect to it. It is clear that the agreement between A. B. Harper and Perry, assuming it to have been made as alleged, contemplated the acquisition by Perry of the title to school land without the required settlement and occupancy, and that, in violation of law, Harper should purchase land for the benefit of Perry and make affidavit that he was not purchasing the same for any other person. Such a contract falls within that class of contracts which the courts refuse to enforce. The contracts alleged to have been made by the substitute purchasers succeeding said Harper are based upon the original illegal contract, and provide for carrying the same out in further disregard of the laws of the state. The courts will leave parties to such collusive contracts in the position it finds them, and it must therefore be held that no error was committed in refusing to permit evidence of such contracts to be adduced. Brown v. Brown, 132 S. W. 887; Rogers v. Blackshear, 128 S. W. 938. The first five assignments of error are overruled.

[2] It is also contended that plaintiff failed to show title in himself because his title is dependent upon a conveyance made by A. B. Harper and wife after they had conveyed to Perry the land in controversy and after Perry had duly recorded his deed.

The statute relating to transfers of school land provided:

"Purchasers prior to August 12, 1907, may also sell their lands, or a part of the same, in quantities of forty acres, or multiples thereof, at any time after the sale; and in such cases the vendee, or any subsequent vendee, or his heirs or legatees, shall file his own obligation with the commissioner of the General Land Office, together with the duly authenticated conveyance or transfer from the original purchaser and the intermediate vendee's conveyance or transfer, if any there be, duly recorded in the county where the land lies, or to which said county may be attached for judicial purposes, together with his affidavit, in case three years' residence has not already been had upon said land and proof made of that fact, stating that he desires to purchase the land for a home, and that he has in good faith settled thereon, and that he has not acted in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase, save himself; and thereupon the original obligation shall be surrendered or canceled or properly credited, as the case may be, and the vendee shall become the purchaser direct from the state, and be subject to all the obligations and penalties prescribed by law, and the original purchaser shall be absolved in whole or in part, as the case may be, from further liability thereon; and, if he or his vendor has already resided on his home section for three years, or when he or his vendor, or both together, shall have resided upon it for three years, the additional lands purchased may be patented at any time." Article 5436, p. 3606, Sayles' Ann. Statutes.

This statute has been construed to mean that the substitution is a sale which cures irregularities or invalidity of the previous sale. Goodwin v. Koonce, 130 S. W. 620; Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71; Reinenger v. Pannell, 46 Tex. Civ. App. 137, 101 S. W. 816; Davis v. Yates, 133 S. W. 285.

The conveyance does not vest in the grantee any right or title to the land, in cases in which the occupancy has not been completed, such as would support an action to recover the same, but merely gives him the right to apply for the purchase of the land upon the conditions stated in the law. Hardman v. Crawford, 95 Tex. 199, 66 S. W. 206. Unless his application is accompanied with affidavit of settlement the same cannot be granted. Perry did not apply to be recognized as substitute purchaser, for the reason that he could not show compliance with the conditions prescribed by law. Coston and Martin did become substitute purchasers, and such purchases were never canceled, but notwithstanding that fact the commissioner issued patents to Perry for the lands described in the conveyance made him by A. B. Harper and wife. As the statute only permits the sale of a right to become substitute purchaser, the land was never sold to Perry by the state, and he acquired no title thereto, but it was sold to Coston, and afterwards to Martin. Such sales were not void, and Martin occupied the position of purchaser for more than a year after his purchase without any suit being brought by Perry for the purpose of asserting a prior right to purchase.

[3] It is held by our Supreme Court that the act now known as articles 5458 and 5459, Revised Statutes of 1911, was not only a statute of limitation, but, in addition to fixing a time for suit, contains both a rule of substantive law and a rule of evidence which the courts must take notice of and be guided by in the decision of causes; that the award in a contest over school land constitutes the title of the purchaser, which may be produced in evidence without special pleading, and, when it is produced and shown to have stood for a year, this statute, of which the court must take notice, makes it conclusive evidence of a valid sale against every one but the state. Erp v. Tillman, 103 Tex. 574, 131 S. W. 1060. We believe this statute is applicable to the instant case. The sale of the land to a substitute purchaser must be held to entitle such purchaser to the same rights under the law as if it had been an original purchase. Perry failed to sue within a year, and never even made application to become a substitute purchaser of the land. He could acquire no rights unless he did so, and the unauthorized act of the commissioner in patenting the lands to him cannot give him such a title as he can assert against Martin's purchase, which, at the end of a year, gave him a good title as against others than the state. Such sale to Martin, taken with the certificate of occupancy issued by the commissioner, showed title in Martin to the land in controversy. The sixth assignment is therefore overruled.

The seventh and eighth assignments are without merit.

The judgment is affirmed.