## W. H. GARRETT v. J. FINDLATER, JR.

Decided November 18, 1899.

**1. Vendor's Lien—State School Land—Forfeiture and Repurchase.**

Where one who had bought school land from the State sold and conveyed it to another, reserving a vendor's lien and stipulating in the deed that if the grantee therein should allow the purchase from the State to become forfeited in order to repurchase at a lower price, this should not affect the grantor's rights and equities, the lien could be enforced against the land after such forfeiture and repurchase by the grantee.

**2. Promissory Note—Proof of Ownership—Indorsement.**

Plaintiff's possession at the time of trial of a note upon which he has brought suit is sufficient evidence of his ownership thereof, though it bears his indorsement in blank.

**3. State School Land—Validating Act.**

In an action for the purchase price of State school land by a vendor who was the original purchaser from the State, the defendant vendee can not set up irregularities in the original purchase which have since been cured by a validating statute.

APPEAL from Jones. Tried below before Hon. N. R. LINDSEY.

*C. H. Steele,* for appellant.

*C. M. Christenberry,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by John Findlater, Jr., against W. H. Garrett to recover on three promissory notes of $233.33 each, with interest and attorney's fees according to their legal tenor, executed by said Garrett to T. C. Terry as part of the consideration for the southwest quarter of section No. 7, Deaf and Dumb Asylum land, lying in Jones County, conveyed by Terry to Garrett on August 18, 1897, by quitclaim deed, and to foreclose the vendor's lien which was expressly retained in said notes, which notes were duly acknowledged by Garrett on September 29, 1897, and duly recorded in the deed records of Jones County on the same day. Said notes were indorsed in full by Terry to Findlater.

Garrett pleaded the general denial, and specially that the land was public domain at the time Terry sold same to him, and that the sale and notes for that reason were void as against public policy, because while the Commissioner of the General Land Office had sold the same in 1884 to Terry's vendor, yet said sale was void because not made according to law; and also that if said sale should for any reason be held valid, yet the same and all of Terry's rights therein had been forfeited for non-payment of interest due November 1, 1897, as required by the Act of 1897, and that on May 14, 1898, said forfeiture was declared by the Commissioner, and afterwards on May 20, 1898, the same was resold by the Commissioner to appellant.

To this appellee replied that Garrett in his purchase from Terry, and as part of the consideration thereof, agreed to pay all the interest due

on said land, including that due for 1897, and agreed also that if the sale was forfeited it should not affect Terry's rights in any manner whatever, and also pleaded that appellant was by reason of such agreement estopped from setting up the forfeiture of the original sale.

The case was tried without a jury, and the court gave judgment against appellant for the amount due on the notes, and foreclosure of the vendor's lien on the land, from which judgment this appeal is taken upon a full statement of facts made out and filed by the district judge, the parties having failed to agree thereon.

The record discloses the following facts:

In January, 1884, the land in controversy was public land surveyed and set apart as Deaf and Dumb Asylum land. It was sold by the Commissioner of the General Land Office in said month and year to W. J. Suggs, under the Act of April 12, 1883, but no tabulated statement had been filed in the surveyor's office of Jones County showing the classification or appraisement of said land, as required by said act. Terry held the land under a regular chain of transfers from Suggs.

The interest due the State was regularly paid until in 1897, and the amount due for that year not having been paid by November 1, 1897, as required by the Act of 1897, the sale was, on May 14, 1898, declared forfeited by the Commissioner of the General Land Office, and the land was by him resold to Garrett on May 20, 1898. Previous thereto, however, to wit, on August 18, 1897, Garrett had bought the land from Terry for $900, paid $200 in cash or what they considered as cash, and given the three notes sued on, conditioned and providing as above stated, and accepted a quitclaim deed therefor, which deed contained the following: "And it is agreed by vendee, W. H. Garrett, of this conveyance, that in the event this land is hereafter forfeited by him or his vendee for the nonpayment of interest to the State of Texas, such forfeiture shall in nowise forfeit any rights or equities that the said T. L. Terry may this day have in said land as the vendor of W. H. Garrett, and such equities that said T. L. Terry may have in said land shall follow and attach to said land herein conveyed upon the refiling on the same by W. H. Garrett or his vendee. And the said W. H. Garrett this day assumes all unpaid interest on the within described lands to the State of Texas, and agrees to hold said T. L. Terry harmless for the nonpayment of the same." Deed dated August 18, 1897.

The notes bore 10 per cent interest from their date, were made payable in one, two, and three years, respectively, from December 1, 1897, and were dated December 1, 1897, at the request of appellant and for his convenience. Each contained a clause reserving a vendor's lien on the land, and one providing for 10 per cent attorney's fees if collected by suit, and that if not paid at maturity all the notes should become due, at the election of the holder, and they were all indorsed in full by Terry to appellee, and on the back of each appellee had indorsed his name in full, and evidence was offered as to the ownership of the notes.

The first note, due December 1, 1898, was not paid at maturity, and

appellee being the owner and holder thereof, elected to declare all of said notes due, and proceeded to collect them by this suit. They constitute a lien on the land aforesaid.

It was understood and agreed between the appellant and Terry that by forfeiture of the first contract of sale for nonpayment of interest Garrett might repurchase it at $1 an acre, and thereby save $1 per acre, as it was originally sold at $2, and such a step was contemplated by the parties at the time the trade was made and the notes executed, and the clause in the deed relating to the forfeiture was embraced therein to secure Terry in his right to collect the notes and enforce his lien against the land, in the event Garrett took that course.

The second assignment complains that the evidence does not support the judgment, because there is no evidence of ownership in the plaintiff, and the indorsements on the notes show that appellee had indorsed them in blank, and was not, therefore, the owner. The writer once held the same view on the question, but our Supreme Court took a different view of it, and held, for the first time in Texas, that plaintiffs being in possession of the note at the trial was sufficient evidence to establish ownership as against the maker, even where there was a full indorsement to a third party and no indorsement of any kind whatever from him to the plaintiff. Johnson v. Mitchell, 50 Texas, 212; Grant v. Ennis, 5 Texas Civ. App., 44, and authorities there cited.

The third assignment complains that the original sale to Suggs was void, because no tabulated statement showing the classification and appraisement of the land was filed in the surveyor's office of Jones County at the time the Commissioner made said sale to Suggs, but this point, even if available to appellant in this case, would not now be well taken, because of the validating act of 1889, and therefore this assignment is overruled. 2 Sayles' Civ. Stats., 1893 (appendix), p. 1988. It was incumbent on appellant, in order to make good his defense, to show that the original sale was void notwithstanding the healing act.

The fourth assignment is not predicated on facts, because the notes were in fact executed and delivered on August 18, 1897, before the forfeiture took place and before the right to forfeit accrued.

Under appellant's fifth assignment of error it is insisted that when the Commissioner declared the Suggs contract forfeited the land again became public domain, and subject to sale by the Commissioner, and when appellant bought it from the Commissioner he bought it clear of any lien reserved in Terry's notes. Whatever might be the rule in the absence of a contract, we are of the opinion that, as such forfeiture and repurchase by Garrett were contemplated and provided for by the parties in this instance, and because it was expressly stipulated that Terry's rights and equities should remain the same against the land after forfeiture as before, the lien on the land, or on whatever interest therein or title thereto Garrett obtained from the State by the forfeiture and repurchase, remained unimpaired, especially as Garrett had, as part of the consideration of the conveyance to him, agreed and undertaken to pay

the interest of 1897, and in case he elected to forfeit by nonpayment of this interest, in order to get the land for $1, instead of paying $2, that Terry's rights to foreclose should remain the same.

The first assignment is not tenable.

Finding no error in the judgment, it is in all things affirmed.

*Affirmed.*