## H. HAMILTON v. C. M. VOTAW ET AL.

Decided March 24, 1903.

**1.—School Land—Collusion in Sale by State.**

An adverse claimant can not assail the title of a purchaser of school lands on the ground that in making his purchase from the State he acted in collusion with some other, as the State alone can raise that question. Following Logan v. Curry, 95 Texas, 664.

**2.—Same—Application and Obligation—Variance.**

Where an application to purchase school land and the purchaser's obligation for balance of the purchase money were written on the same paper and filed together, the application properly describing the land, and the obligation stating the same county, section number and certificate number, but giving a wrong name for the grantee of the certificate, there was no material variance.

**3.—Same—Detached Land.**

Where a section of school land was sold as "detached land," and at the time all adjoining State lands had been sold except one survey, for which there was a valid application then pending. on which an award to the applicant was afterwards made, such section was "detached land" at that time, and subject to sale as such.

Appeal from the District Court of Liberty. Tried below before Hon. L. B. Hightower.

*E. T. Branch* and *E. B. Pickett,* for appellant.

*Dan H. Triplett* and *J. N. Votaw,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by Charles Earnest against C. M. Votaw. Appellant Hamilton is the vendor of said Earnest, and as such was made a party defendant by Earnest, and judgment sought against him on his warranty in event plaintiff failed to recover the land sued for. The defendant Votaw answered by plea of not guilty. Hamilton answered, admitting that he had conveyed the land to plaintiff by warranty deed, and averred his willingness to defend the title to same against the claim of the defendant Votaw who, he alleged, had no title to said land, and against whose title he pleaded not guilty. He further averred that the land in controversy had been conveyed to him by W. W. Dies by warranty deed, and prayed that said Dies be made a party defendant, and that in event plaintiff should recover against him, that he have judgment against said Dies on his warranty. Dies answered by general denial and plea of not guilty. The case was tried by the court below without a jury, and judgment was rendered in favor of Votaw for the land in controversy, against Hamilton in favor of Earnest for the purchase money and interest paid Hamilton for the land, and in favor of Hamilton against does for the amount paid Dies by Hamilton for said land and the interest thereon. From this judgment only Hamilton has appealed.

The land in controversy was State school land and is the south half

of section No. 2, certificate No. 1796, issued to Beaty, Seale & Forwood, and situated in Liberty County. The findings of fact by the trial court are as follows:

"1. That on the 18th day of September, 1900, M. E. Groos filed his application in the General Land Office of the State of Texas with the Land Commissioner for the purchase of the land in controversy, in which application the land applied for was described as section 2, certificate 1796, grantee B. S. & F., 640 acres, price per acre $1.50, in Liberty County, Texas, about 14 miles S. 70 E. from county site. Sworn to by the applicant on the same day, and upon the same day and as a part of the same transaction, and upon the same piece of paper, the said applicant executed ·and filed at the same time his obligation in writing to pay to the State of Texas the sum of $936, with interest thereon annually at 3 per cent, together with one-fortieth of the original principal, on the first day of each November thereafter until the whole purchase money is paid, etc., as the balance of the purchase money due upon the land described in the application. In said obligation the land is described the same as to State, county, section number and number of survey, but the grantee of certificate No. 1796 in this obligation is given as 'H. & T. C. Ry. Co.,' but I find that it was intended to be and should have been 'B. S. & F.'

"2. That on the 18th day of September, 1900, and prior to the filing of said application, the said land applied for was a detached section, and upon the market at the sum of $1.50 per acre, and that said application was the first application to purchase said land after the same was placed upon the market, and that the first payment for said land was deposited with the Treasurer as required by law.

"3. That said application and obligation so filed by M. E. Groos was in full compliance with the existing law, and entitled the applicant to an award of the land applied for.

"4. That the land so applied for was on the said 18th day of September, 1900, the only section No. 2, certificate No. 1796, school section in Liberty County, Texas, and that there was not and is not now in Liberty County, Texas, any other section of land numbered 2, with certificate No. 1796, and that the said application of the said Groos was for the purchase of school land.

"5. That said land so applied for was properly awarded to the said M. E. Groos by the Commissioner of the General Land Office of the State of Texas, December 18, 1901:

"6. And that the defendant C. M. Votaw, by a deed duly executed by the said M. E. Groos, holds all interest, right and title of the said Groos to said land, and that the said Votaw placed said deed upon record in the county clerk's office of Liberty County, Texas, and thereafter filed the same in the General Land Office of the State, together with his obligation in writing to pay to the State of Texas the balance due upon said land, so awarded to the said Groos in full compliance with the law of this State.

"7. That W. W. Dies, one of the defendants in this suit, filed his application and obligation in writing to purchase the same land involved in this suit with said Land Commissioner in due form of law on the 16th day of January, 1901.

"8. That on the 10th day of January, 1902, the Commissioner of the General Land Office wrongfully canceled the award of M. E. Groos, and on the same day awarded said land to the said W. W. Dies, for the reason that the grantee in the obligation is stated as being H. & T. C. Ry. Co.

"9. That on the 20th day of February, 1901, W. W. Dies, by his general warranty deed of that date, sold and transferred the land in controversy to defendant, H. Hamilton, for the sum of $664.

"10. That on the 20th day of April, 1901, defendant, H. Hamilton, by his general warranty deed of that date, sold said land in controversy in this suit to the plaintiff Charles Earnest for the sum of $1600."

Under the first and second assignments of error the appellant contends that the trial court erred in not finding that there was collusion between Groos and Votaw in the purchase of the land in controversy, and in not rendering judgment for the plaintiff upon that ground.

An adverse claimant can not assail the title of a purchaser of school lands on the ground that in making his purchase he acted in collusion with some other person. This question can only be raised by the State. Logan v. Curry, 95 Texas, 664, 69 S. W. Rep., 129; Thompson v. Hubbard, 69 S. W. Rep., 649.

The third assignment of error complains of the ruling of the trial court in admitting in evidence the application of Groos to purchase the land over the objection of plaintiff that there was a fatal variance between the application and the accompanying obligation for the payment of the purchase money. The fourth assignment complains of the ruling of the court in permitting Groos to testify that said variance was not intended by him, but was a mistake. Under the fifth assignment it is urged that the trial court should have rendered judgment in favor of plaintiff because of the variance above mentioned.

Without discussing these assignments in detail it is sufficient to say that none of them present any error. The statute does not require that the obligation for the payment of the purchase money shall describe the land. Rev. Stats., art. 4218j. An applicant having undertaken, however, to describe the land in the obligation filed by him, such obligation would be void if it described a different tract of land from that described in his application. But we think the obligation filed by Groos sufficiently identifies the land therein described as the same land described in his application, and the variance caused by the misstatement of the name of the grantee of the certificate is immaterial. The application and obligation being a part of the same transaction, and being written upon the same piece of paper, must be construed together, and when so construed it is plain that the obligation is intended as a promise to pay the purchase money of the land described in the application.

Under the remaining assignments the appellant contends that the land in controversy could not have been awarded to Groos, because at the time his application was made it was not "detached" land and subject to sale as such. It would seem that under the principles announced in Logan v. Curry, supra, this issue could not be made by appellant, the State having by its proper officer sold the land as "detached" land. But be this as it may, the evidence shows that the survey was in fact detached land at the time it was sold to Groos. All of the State lands adjoining the survey in question had been sold by the State prior to the 18th of September, 1900, when Groos's application was filed, except section No. 2, certificate No. 1834, L. Priest survey, which adjoined the survey in controversy on the south. There is another L. Priest survey, being section No. 1, certificate No. 1834, which adjoins the land in controversy on the east. On the 17th of September, 1900, F. M. Wells filed application to purchase the north 80 acres of L. Priest survey, certificate No. 1834. This application was suspended by the Land Commissioner until the Land Office could be informed as to which of the L. Priest surveys was intended, and the sale was not made to Wells until December 12, 1900, when he was awarded the north 80 acres of section No. 2, L. Priest survey.

From this statement of the evidence it appears that at the time Groos filed his application to purchase the land in controversy, all of the adjoining lands owned by the State had been sold except the north 80 acres of section No. 2, certificate No. 1834, L. Priest survey, and that a valid application to purchase this 80 acres had been filed by Wells and upon this application said land was awarded to Wells on December 12, 1900.

We think these facts show that the land in controversy was detached land at the time the application of Groos was filed. The application filed by Wells for the 80 acres of the L. Priest survey was a valid application and entitled him to an award of the land which he afterwards received. The sale to Wells took effect from the date of his application, and from that date the land in controversy became detached land.

We think the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.