## J. W. MANEY v. E. J. EYRES ET AL.

### Decided November 12, 1903.

1.—School Lands—Sale of Detached Lands.

As between two applications to purchase school lands on the market in detached sections, both conforming to the requirements of law, the first filed has the prior right of purchase, and the Commissioner of the General Land Office properly discharges his duty when, having wrongfully, through mistake, rejected the prior application and accepted the subsequent he sets aside the latter and reinstates the first.

2.—Same—Collusion Between Purchasers—Commissioner's Certificate.

The affidavit of the prospective purchaser of school land made under the pains and penalties of perjury is a sufficient safeguard against bad faith, and the making of such affidavit, and a compliance with legal requirements in other respects, prima facie imposes upon the Commissioner of the General Land Office the duty to allow the application for the purchase. If such purchase was in fact collusive, only the State can take advantage of it. Logan v. Curry, 95 Texas, 664.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*R. W. Flournoy* and *O. S. Kennedy,,* for apellant.

*Lanier & Martin, J. N. Votaw,* and *Nall & Dies,* for appellee.

• GILL, ASSOCIATE JUSTICE.—This is an action of trespass to try title and for damages brought by J. W. Maney against E. J. Eyres as claiming title to the lands sued for, and other defendants who were alleged to be in possession and committing waste thereon. The allegations are in the usual form, averring title, ouster and damage in general terms. The defendants' answers consist of general denials and pleas of not guilty.

The lands sued for are school lands sold by the State to one Callaway, the vendor of Eyres, as detached sections. They were first applied for by Callaway, accompanied by a compliance with all the requirements of the law, but the applications were disallowed on the ground that the records did not show the lands to be detached sections. As a matter of fact they were at that time detached by reason of the allowance of an application to purchase the adjoining sections made by one Hooks. After the disallowance of Callaway's application that of appellant's vendor was allowed, he also undertaking to purchase them as detached sections. When the Commissioner of the General Land Office learned that the sections were actually detached at the time Callaway's application was filed, and at the time it was refused, he set aside the contract of sale with appellant's vendor, and consummated the sale to Callaway after reinstating his application.

Appellant seeks to annul the sale to Callaway and secure the sale to himself on the ground that the application of Hooks, for the purchase of the adjoining sections, was not made in good faith but was procured to be made by him through the active agency of Callaway, the vendor of Eyres, for the purpose of isolating the land in controversy so that it

might be purchased by defendants. That the present claim to it by defendants is in furtherance of that fraud and conspiracy. That subsequent to these purchases Hooks abandoned the purchases made by him. That because of this fraud and the bad faith of Hooks participated in by defendants the lands were not in fact detached either at the date of his application, its refusal or reinstatement. That while this is true it can not defeat appellant's right to purchase, because neither he nor his vendor were participants in the fraud, nor had they any notice of the facts at the time his application was allowed, nor at the time appellant became a purchaser for value.

The court heard the evidence offered by apellant in support of these contentions but gave the jury a peremptory instruction in favor of defendants.

The material facts as to the status of the lands in controversy are undisputed, and are as follows: The lands, viz., sections 210 and 220 of the Houston & Texas Central Railway Co. surveys in Hardin County, were lawfully on the market for sale, when applied for by the grantors of both plaintiff and defendant. They belonged to the public school fund of Texas and had been properly classified and appraised.

Several applications dated June 8, 1900, signed by one O. L. Hooks, made respectively for a certain section 216 in said county as an actual settler and for another whole section and certain halves of other sections as additional lands, were received and filed in the General Land Office on June 11, 1900. These applications were regular and were accompanied by the first payments, the lands so applied for by Hooks being regularly upon the market for sale.

The application of Callaway for section 210 was filed June 12, 1900, and was indorsed "not detached," June 26. The error was corrected and the award made on October 12, 1900.

The application for section 220 has the same history, with a slight variation in dates, and the error was corrected and the award made on December 18, 1900. Callaway sold and conveyed his right to Eyres on July 21, 1900, by deeds of that date, one of which was filed in the Land Office February 19, 1902, the other January 7, 1902. Patents were issued to Eyres March 6, 1902.

On August 1, 1900, Dies, the vendor of appellant, applied to purchase section 210, and on September 7, 1900, made a like application for section 220. He sought to buy them as detached sections, their status as such depending on the purchase of Hooks.

These applications were regular, complied fully with the law, and were duly filed. Appellant purchased from Dies. The sections were awarded to Dies on September 20, 1900, and October 12, 1900, respectively. These awards were canceled over the protest of appellant on December 18, 1901.

On October 29, 1900, Hooks abandoned his purchase and so advised the Land Office.

The effect of the purchase by Hooks was to detach the land in controversy.

After they were awarded to Callaway the effect of Hooks' abandonment of his purchase was to detach them so as to subject them to sale without occupancy.

The Hooks abandoned purchases were finally bought from the State by persons connected with the Kirby Lumber Company and probably in the interests of that concern.

It is made to appear probable that the two sections in controversy are owned by Eyres in the interest of that company, at least to the extent of the timber upon them. It also appears that persons connected in one way or another with that concern induced Hooks to buy and assisted him in making the purchase.

But Hooks testifies that he bought for himself in good faith, actually lived on his purchase four months; that his belongings remained thereon about four months longer, and that he abandoned the lands only on account of ill health and inability to meet the payments.

This proof stands uncontradicted. If his purchase was made in good faith, that ends the controversy, for no bad faith on the part of others could change the legal effect of his act. It is also true that appellant's right to purchase the sections as detached depended on the Hooks purchase. Waiving, therefore, the question whether this broad inquiry could have been made under the pleadings as they stand, we hold the trial court rightly charged the jury that there was no fact issue for them to determine, and that the plaintiff had failed to make out his case.

On the facts disclosed by this record the judgment must be affirmed, and it is so ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

GILL, ASSOCIATE JUSTICE.—At a former day of this term we affirmed the judgment of the trial court on the theory that the evidence presented no issue on the validity of the Hooks purchases. We had no doubt (and now have none) but that the facts strongly presented the issue of fraud and collusion as between the other parties, who purchased the lands isolated by the Hooks purchase. If the charges made by plaintiffs are true it is to be earnestly hoped that the State, through the proper channels, may establish the facts and undo the wrong. But our view of the situation in so far as it bore upon plaintiff's rights was this: That whatever the private motive of those who suggested the purchase of Hooks, and aided him in making it, they had done no more than to induce him to do a lawful thing. That he actually occupied the premises and improved them is not disputed. The question, therefore, was not what he did or the effectiveness of what he did if done in good faith, but whether or not it was so done.

Appellants in their motion for rehearing have made a very strong presentation of the facts, and while it is mainly an arraignment of others than Hooks, it can not be denied that it at least raises a strong

suspicion of his motives even in the face of his denial. We gravely doubt the correctness of our conclusion upon this point. Because of this doubt we have been induced to look further into the law question upon which the trial court directed a verdict.

This suit is in effect an assault on the Callaway purchase as having been made in collusion with others and in furtherance of a conspiracy with them. The Hooks purchase is assailed for the same reason.

The Supreme Court has held that the Legislature deemed the affidavit of the prospective purchaser made under the pains and penalties of perjury a sufficient safeguard against bad faith, and that the making of such affidavit and a compliance with legal requirements in other respects prima facie imposed upon the Land Commissioner the duty to allow the application for purchase, and that if such purchase was in fact collusive only the State could take advantage of it. Logan v. Curry, 95 Texas, 664. See also Hamilton v. Votaw, 73 S. W. Rep., 1091; Thompson v. Hubbard, 69 S. W. Rep., 649.

We are of opinion the facts of this case invoke the doctrine thus announced. It follows that the judgment was rightly affirmed for this reason, even if it be conceded that we were in error on the other point.

We are requested by appellant to find as additional facts the evidence on the issue of bad faith and collusion. It is never the duty of this court to find what the evidence is. That is disclosed by the record. Where necessary it is our duty to find what facts the evidence in the record establishes. What we have already found will entitle appellant to every right upon application for writ of error that he would have should we embody in this opinion the entire statement of facts.

We are of opinion the motion should be overruled and it is so ordered.

*Overruled.*

Writ of error refused.