MAUD GOOD ET AL. v. J. J. TERRELL, COMMISSIONER.

No. 1611. Decided January 2, 1907.

**School Land—Sale by Purchaser.**

Under the Act of April 15, 1905 (Laws 1905, p. 159), a purchaser of school lands on condition of settlement could not sell same until proof of his compliance with the condition was filed with the Land Commissioner; and, though he made due settlement, and mailed to the Commissioner the requisite proof, which was not received, the award of the land to him was properly canceled. (Pp. 275–277.)

Original petition to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*S. J. Isaacs,* for relator.

*R. V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent.

GAINES, CHIEF JUSTICE.—The Commissioner of the General Land Office having canceled an award of four sections of school land, originally made to one Perry, the relator, Maud Good, who claimed the latter's

right as a purchaser from him, brought this action to compel the Commissioner to set aside the cancellation, to reinstate the sale, and to substitute her as the purchaser from the State. Her husband joined her in the suit.

Perry made application to purchase the lands under the Act of 1905, and, having in all respects complied with the requirements of the statute, they were awarded to him as a purchaser. The home section having been awarded to him January 13, 1906, he settled upon that tract on or about the 20th day of that month, and, on the 25th of the same month, made affidavit of settlement as required by law. This affidavit was immediately enclosed in an envelope, properly addressed to the Commissioner of the General Land Office, and, having been duly stamped, was deposited in the postoffice for transmission to the Commissioner at Austin. It never reached the General Land Office. On the 5th of March next thereafter Perry conveyed the lands to the relator, Maud Good, and her deed, after having been recorded in the office of the county clerk of Upton County, was forwarded with the substitute obligations to the General Land Office. Upon the receipt of the conveyance, the Commissioner declared the lands forfeited, and placed them again upon the market.

The "Act to provide for the sale and lease of the public free school and asylum lands," approved April 15, 1905 (Laws of 1905, p. 159), inaugurated a new policy. The previous laws, as a general rule, required, as a condition precedent to purchase these lands, that the applicant should be an actual settler upon the section sought to be purchased as a home. But that act permitted anyone, otherwise qualified to purchase, to make application, but required that, in case lands were awarded to him, that he should settle upon his home tract within ninety days of the date of the award. For the purpose, as it would seem, of selling the lands to those only who desired to make their homes upon them, and to prevent speculators from procuring awards and selling their right to others, the act provides that they shall not be sold before the purchaser has settled upon them. In section 4 of the act it is emphatically declared that "a purchaser shall not transfer his land prior to his actual settlement thereon, and evidence of that fact filed as herein provided, and any attempt to so transfer by deed, bond for title, or other agreement, shall operate as a forfeiture of the land to the fund to which the same belonged, together with all the payments made thereon, and when sufficiently informed of the facts which operate as a forfeiture, the Commissioner shall note the fact of forfeiture upon the application, and proceed to place the land on the market by notice to the proper county clerk, and advertisement, in the manner provided for canceled leases." The effect of this provision is to make a sale, not only before settlement, but also before the affidavit thereof—which is the evidence required by law of the settlement—shall be filed in the General Land Office, work a forfeiture ipso facto, and to make it the duty of the Commissioner to declare the forfeiture, when informed of the fact. The words are too plain to admit of any other construction. The rights of a purchaser are not fixed until he has made a settlement. Should he fail to make his home upon the land in ninety days, his right ceases. One purpose

for requiring the filing of the affidavit in the Land Office within one hundred and twenty days from the date of the award was, doubtless, to enable the Commissioner to know whether the condition of the law had been complied with, so that in case settlement was not made, and the affidavit filed, he could proceed to place the land again upon the market. The reason for forbidding a sale, although a settlement has been made, before the affidavit has been filed, is not so obvious. It may have been that, because the applicant's right as a purchaser is not complete until the affidavit is received in the Land Office, he should not sell before that time; and it may have been thought that the orderly dispatch of business in that office required that the evidence of the completion of the purchase should be there filed before a conveyance should be made. It may also be that the enactment was thought proper in order to prevent evasions of the law. But, whatever may have been the motive, the law is so written, and it must be given effect.

The statute is imperative, and it is not a question of diligence which might arise under contracts between individuals. It is true that cases of hardship, such as this may seem to be, may arise under the operation of the statute; but this is a result that is difficult to prevent under legislation of the character of that under consideration. The Legislature doubtless thought that thirty days was ample time within which, for anyone who uses ordinary diligence, not only to make an affidavit, and to file it in the Land Office, but also to know positively that it has been so filed.

Since the husband of Mrs. Good had purchased a full complement of school land, it is doubtful whether she had a right to purchase in this case. But a determination of that question is not necessary to a decision of this case.

For the reasons given, we think the writ of mandamus prayed for should be refused, and it is accordingly so ordered.