CLARK et al. v. ALTIZER et al.†

(Court of Civil Appeals of Texas. Austin. Jan. 24, 1912. On Rehearing, Feb. 28, 1912. Rehearing Denied March 27, 1912.)

1. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—DISPOSAL—VENDIBLE TITLE.

Where school lands were legally awarded by the state, a substitute purchaser acquired a vendible title which was a sufficient consideration to support notes given for the purchase money therefor, and a mortgage given to secure the same, though the three years' occupancy prerequisite to the issuance of final title by the state had not been completed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

2. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—SALE BY GRANTEE OF STATE — PUBLIC POLICY.

A sale of school lands awarded by the state before the three years' occupancy prescribed as a prerequisite to the issuance of final title by the state is not against public policy.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

3. MORTGAGES (§ 10*)—PROPERTY WHICH MAY BE MORTGAGED.

In the absence of a statutory prohibition, any property that may be sold may be mortgaged.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 9; Dec. Dig. § 10.*]

4. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—DISPOSAL—ABANDONMENT BY PURCHASER—DECLARATION OF FORFEITURE.

While a person to whom school lands were awarded upon application obtained no title by reason of his application and the award, but only a prior right for a limited time to purchase, yet, when he made his settlement and filed his affidavit thereof in the manner required, the equitable title thereto was vested in him, and no failure to occupy the lands as provided in the statutes could work a forfeiture ipso facto; it being necessary that there be a declaration of such forfeiture by the state.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

5. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—RIGHTS OF PURCHASERS FROM ORIGINAL GRANTEE.

Where a person to whom school lands were awarded sold them and procured the cancellation of the award to him and the making of an award to his purchaser to strengthen the title, such purchaser who consented thereto cannot be heard to object that his mortgage to secure the purchase price was invalid because his grantor had not actually settled on the land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

6. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—RIGHT TO PURCHASE—COLLUSION.

Though the person to whom school lands were awarded paid the expenses of obtaining a cancellation of the award to himself and a second award to his vendee because of a doubt as to his settlement being a sufficient compliance with the law, his act would not make him interested with his vendee in the purchase of the land so as to taint the grant with collusion which would invalidate a mortgage given for the purchase price.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

7. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—RIGHT TO PURCHASE—COLLUSION—RIGHT TO OBJECT.

Any collusion between the parties in securing the second award could be taken advantage of only by the state.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

8. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—CONTRACTS—VALIDITY—PUBLIC POLICY.

Where a person holding an award of school lands from the state agreed with one who purchased from him that he would file an affidavit that he had not complied with the law as to continued occupancy, so as to secure a cancellation of the first award, and another award of the lands to such purchaser, and in pursuance thereto he did the acts in question and paid the state the required portion of the purchase money for his purchaser, neither the transaction nor the deed of trust to secure the payment of the purchase money are against public policy, as the state gained as well as lost a purchaser, and also secured the advantage of the payment made.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

9. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—SALE — CONSIDERATION — PRE-EXISTING DEBT.

A pre-existing debt for the balance due on the purchase price of school lands, though it be afterward ascertained that the vendor had no title to such land, was a sufficient consideration to support a mortgage executed upon a cancellation of the vendor's right at his instance and an award of the same premises by the state to the purchaser in order to give him a good title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

10. VENDOR AND PURCHASER (§ 176*) — PURCHASER BY QUITCLAIM — SHORTAGE IN QUANTITY—ABATEMENT OF PURCHASE PRICE.

A partial failure of consideration will not abate the purchase price as to one claiming under a quitclaim deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. § 176.*]

11. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—TRANSFER BY PURCHASER—BONA FIDE PURCHASER.

The holder of an award for school lands, having sold them, procured, with consent of his purchaser, the cancellation of the award to himself and a new award to the purchaser. The purchaser thereafter gave a purchase-money trust deed to the original holder, which was duly recorded. Held, that a subsequent purchaser from the mortgagor was chargeable with notice of the mortgage.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

12. VENDOR AND PURCHASER (§ 224*)—BONA FIDE PURCHASERS—QUITCLAIM DEED.

The grantee in a quitclaim deed cannot defend as a bona fide purchaser against the lien of a trust deed against the land made by his grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 469–473; Dec. Dig. § 224.*]

On Rehearing.

13. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—STATUTES—REPEAL.

Rev. St. 1895, art. 4218k, which provides that on a purchase of school lands from the original purchaser from the state the vendee shall file his application with the commissioner of the land office, together with a duly authenticated and recorded transfer, and thereupon the original application shall be surrendered, canceled, or properly credited, and the vendee shall become the purchaser direct from the state, etc., was not repealed by Acts 30th Leg. (1st Ex. Sess.) c. 20, which provides in section 6d that "one who hereafter buys land on condition of settlement shall not sell any part of such purchase prior to one year after date of award of the home tract," and a substituted purchaser under that section will become an original purchaser from the state.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

14. PUBLIC LANDS (§ 178*)—SCHOOL LANDS—SALE.

Rev. St. 1895, art. 4218k, provides that on a purchase of school lands from the original purchaser from the state the vendee may be made an original holder from the state by filing his application with the commissioner of the land office, together with the duly authenticated and recorded conveyance or transfer from the original purchaser. Acts 30th Leg. (1st Ex. Sess.) c. 20, § 6d, provides that "one who hereafter buys land on condition of settlement shall not sell any part of such purchase prior to one year after the date of award of the home tract." Section 6e provides that "one who may hereafter purchase land * * * and executes a transfer contrary to the provisions of this act * * * shall forfeit the lands and all payments made thereon to the fund to which the land belongs," etc. Held that, where a holder of a right to a title in school lands transferred his interest within less than 12 months after the sale to him by the state, the award to him became ipso facto forfeited and the land reverted to the state free of any incumbrance which the purchaser may have placed thereon, and, where his vendee later secured an award from the state, he took the land free from the incumbrance of a trust deed executed by the vendor.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Action by J. H. Altizer and another against W. G. Clark and another. From a judgment

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

for plaintiffs, defendants appeal. Affirmed in part, and in part reversed and rendered.

L. H. Brightman, of San Angelo, and J. B. Wade and Smith & Wade, all of Ballinger, for appellants. B. B. Stone, of Ballinger, and Blanks, Collins & Jackson, of San Angelo, for appellees.

## Findings of Fact.

JENKINS, J. 1. In April, 1906, eight sections of school land in El Paso county were awarded to J. R. Arnett, who remained a settler thereon until about the 15th day of February, 1907, when he sold same to J. H. Altizer.

2. Upon proper application, Altizer was substituted by the state for Arnett as the purchaser of said land.

3. About March 1, 1907, Altizer sold said land to appellant Clark, who at once became a settler thereon, and so remained until he sold to appellant Padgett, to wit, on May 4, 1908.

4. Clark executed the notes herein sued on for the purchase money of said land.

5. After Clark had bought said land, some question was raised as to Altizer's occupancy of said land, when Altizer, by agreement with Clark, sent to the land office his affidavit that on account of the continued sickness of his wife, and a misapprehension of the law, he could not make proof of continued occupancy, and asked that the sale to him as substitute purchaser for Arnett be canceled and that the land be awarded to Clark. This was accompanied by a proper application from Clark, together with one-fortieth of the purchase money, and his obligation for the balance, and the land was awarded to him August 1, 1907.

6. When Altizer first sold to Clark, Clark executed a deed of trust on said land to secure said notes, and again on January 22, 1908, executed a second deed of trust on said land to secure said notes. Both of said deeds of trust were duly recorded in El Paso county prior to the purchase of said land by Padgett.

7. The deed from Altizer to Clark and from Clark to Padgett were each quitclaim deeds.

8. Padgett finished the three years' occupancy under the sale to Clark, and obtained the certificate of the commissioner of the land office to that effect.

9. Clark alleged that Altizer never became an actual settler on said land. This issue was not submitted to the jury, and we do not deem it necessary to make any finding of fact in reference thereto. The evidence was sufficient to raise the issue had it been necessary to a determination of this case.

10. Clark alleged that the first deed of trust was to be held in escrow, and that it was never legally delivered. That the execution of the second deed of trust was obtained by Altizer's fraudulently representing to him that the same was a note. These issues were submitted to the jury, as hereinafter explained. The effect of the verdict is that Clark's contention as to one or the other of said deeds of trust is not true. The evidence would sustain a verdict either way as to either of said issues.

11. When Altizer sold to Clark, there were improvements on the land of the value of from $100 to ———.

## Opinion.

In view of the facts above set out upon the issues raised by the pleadings and assignments of error, we hold:

[1] 1. The land having been legally awarded by the state, and Altizer having become the substitute purchaser, he had a vendible title, the transfer of which to Clark was a sufficient consideration to support the notes given for the purchase money thereof and the mortgage to secure the same, although the three years' occupancy prerequisite to the issuance of final title by the state had not been completed. Bumpass v. McLendon, 45 Tex. Civ. App. 519, 101 S. W. 491; Harwell v. Harbison, 43 Tex. Civ. App. 343, 95 S. W. 30.

[2, 3] Such sale was not against public policy; on the contrary, the statute contemplates, and expressly provides for, such sale. Bourn v. Robinson, 49 Tex. Civ. App. 157, 107 S. W. 874; Williams v. Findley, 99 Tex. 468, 90 S. W. 1089. In the absence of statutory prohibition, as in the case of a homestead, any property that may be sold may be mortgaged.

[4] 2. Altizer's failure to settle on or to continue to occupy the land, if such was the fact, did not, ipso facto, forfeit the sale to him, but the title remained in him until the same was declared to be forfeited by the Commissioner of the Land Office. Adams v. Terrell, 101 Tex. 331, 107 S. W. 538; Williams v. Keith, 111 S. W. 1056; Bates v. Bratton, 96 Tex. 279, 72 S. W. 157; Tillman v. Erp, 121 S. W. 549. While the original purchaser acquired no title by reason of his application and the award to him, but only a prior right for a limited time to purchase, yet when he made his settlement within 90 days, and thereafter within 30 days filed his affidavit of settlement, the equitable title to the land was vested in him and passed to his assignee, subject to forfeiture by failure to comply with the law as to settlement and payment of interest; but, until such forfeiture was legally declared by the state, such title remained in the original purchaser or his assignee as substitute purchaser.

[5] 3. It is insisted by appellants that the issue as to whether or not Altizer became and remained an actual settler on the land should have been submitted to the jury in this case, and that, if they had found against such settlement, the first mortgage should have been held to have been invalidated by such failure. However this may have been

under other circumstances, we conclude that, in view of the fact that the cancellation of the sale to Altizer was procured with the consent of Clark, and for the purpose of strengthening his title, and the title to said lands was vested in him under said agreement, he cannot be heard to object to the foreclosure of such mortgage. If the first mortgage was properly foreclosed, the judgment of the trial court should be sustained without reference to the second mortgage.

[6] 4. The fact that Altizer paid the expenses of obtaining the award to Clark, including the first payment of one-fortieth of the purchase money, did not make him interested with Clark in the purchase of said land within the meaning of the statute on that subject. If there was a fair doubt as to Altizer's settlement being a compliance with the law, the payment by him of the expenses incurred in removing all doubt as to Clark's title ought to have been borne by him. It is true that he was interested in the security for his debt, but he acquired no interest in the land by virtue of the award to Clark.

[7] But a sufficient answer to appellants' contention in this regard is that, if there was collusion between Clark and Altizer in the sale to Clark by the state, no one but the state could take advantage of such collusion. Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Underwood v. King, 102 Tex. 561, 119 S. W. 300; Maney v. Eyers, 33 Tex. Civ. App. 497, 77 S. W. 969; Thomson v. Hubbard, 69 S. W. 649; Hamilton v. Votaw, 31 Tex. Civ. App. 684, 73 S. W. 1091. The writer has never regarded the proposition that no one but the state can take advantage of the collusion of the purchaser of school lands as the correct interpretation of the statute nor as in accord with sound public policy, but it is stare decisis, and not now open to discussion. Its application works no injustice, however, in this case. If there was collusion between Altizer and Clark, it but prevents Clark from taking advantage of his own wrong.

[8] 5. The appellants contend that even though the second deed of trust was executed in pursuance of an agreement between Altizer and Clark, that Altizer should file an affidavit that he had not complied with the law as to continued occupancy of the land, and thereby to secure the cancellation of the sale to him, and the award of the land to Clark, such transaction was against public policy, and the deed of trust based thereon cannot be enforced. To this we cannot agree. It is true that in such transaction the state lost Altizer as a purchaser, but at the same time it secured Clark in his place upon the same terms, and in addition thereto received payment of the one-fortieth of the purchase money the second time. In this transaction the state is the gainer by $128. It was not the purpose of Altizer or of Clark to in any manner defraud the state in this transaction,

but only to settle all question as to Clark's title. Had the sale to Altizer been canceled without his consent, the state would have done just what it did do, and that is award the land to Clark upon his application to purchase.

It was competent for the parties to enter into this agreement whereby Clark secured title to the land; and it was lawful for him to agree that Clark, upon securing the award to himself, should execute a second deed of trust to Altizer to secure the payment of the purchase money that he owed on said land. Williams v. Findley, 99 Tex. 468, 90 S. W. 1089; Garrett v. Findlater, 21 Tex. Civ. App. 635, 53 S. W. 839; Miller v. Roberts, 18 Tex. 16, 67 Am. Dec. 688.

[9] The pre-existing debt was a sufficient consideration to support the second mortgage. Alstin v. Cundiff, 52 Tex. 464; Robertson v. Parrish, 39 S. W. 646. If the second mortgage was properly foreclosed, the judgment of the trial court should be affirmed without reference to the first mortgage.

6. Where the vendor of school land, which has been awarded to him, is in possession thereof, sells the same, and delivers possession to his vendee, and it is afterwards ascertained that he had no title to said land, it cannot be said that there was no consideration for such sale, nor that the consideration has wholly failed. Williams v. Findley, supra; Hodo v. Leeman, 27 Tex. Civ. App. 204, 65 S. W. 381.

[10] 7. Partial failure of consideration will not abate the price as to one claiming under a quitclaim deed. Scott v. Slaughter, 35 Tex. Civ. App. 524, 80 S. W. 645; Williams v. Findley, supra.

[11] 8. As to the second deed of trust, at least, Padgett was not an innocent purchaser. Had he examined the records of El Paso county, he would have found said deed of trust executed subsequent to the title which Clark received from the state. The record of such mortgage was constructive notice to him.

[12] 9. Padgett, having acquired title under a quitclaim deed, cannot defend under the doctrine of innocent purchaser, even though it should be held that he had neither actual nor constructive notice of either of the deeds of trust executed by Clark on said land. Harrison v. Boring, 44 Tex. 255; Woody v. Strong, 45 Tex. Civ. App. 256, 100 S. W. 801; Culmell v. Borroum, 13 Tex. Civ. App. 458, 35 S. W. 942; McMurray v. Lumber Co., 56 Tex. Civ. App. 199, 120 S. W. 246; Threadgill v. Bickerstaff, 87 Tex. 523, 29 S. W. 757.

For the reason herein stated, the judgment of the trial court is affirmed.

Affirmed.

## On Rehearing.

1. Both Clark and Padgett, appellants herein, have filed motions for rehearing. All of the issues raised in Clark's motion for re-

hearing were fully discussed in the original opinion herein, and nothing in said motion has convinced us that we were in error as to appellant Clark.

In our findings of fact herein, we stated that the land in controversy was awarded to appellant Clark on August 1, 1907. The sale to Altizer was canceled August 26th, and the sale to Clark was made August 30, 1907. In so far as the issues were discussed in appellants' original brief herein, the date of said award was immaterial, but appellant Padgett in his motion for rehearing has called our attention to the fact that the act of 1905 (Acts 29th Leg. c. 103), which was supposed to be the law governing this case, was amended by the act of 1907 (Acts 30th Leg. [1st Ex. Sess.] c. 20) and that said act went into effect 90 days after the adjournment of the Legislature, which occurred on May 12, 1907, and consequently said act went into effect August 11th. Attorneys for appellant Padgett frankly confess that they did not know that the act of 1907 was in effect at the time Padgett was substituted as purchaser for Clark, to wit, on August 30, 1907, but they now call our attention to said fact, and insist that by reason thereof the judgment herein should be reversed as to said appellant.

[13] 2. The act of 1905 regulating the sale and purchase of school lands did not repeal article 4218k of the Revised Statutes. Clark v. Terrell, 100 Tex. 277, 98 S. W. 642. This is also true of the act of 1907. Said article 4218k, Rev. St., permits purchasers of school land to sell the same, and provides that the vendee shall file his own application with the Commissioner of the Land Office, together with the duly authenticated conveyance or transfer from the original purchaser, duly recorded in the county where the land lies, stating that he desires to purchase the land for a home, etc., "and thereupon the original applications shall be surrendered or canceled or properly credited, as the case may be (if he has sold only a part of his land), and the vendee shall become the purchaser direct from the state, and be subject to all the obligations and penalties prescribed by this chapter, and the original purchaser shall be absolved, in whole or in part, as the case may be, from further liability thereon." In such case the substituted purchaser becomes an original purchaser from the state. Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71; Reininger v. Pannell, 46 Tex. Civ. App. 137, 101 S. W. 816; Davis v. Yates, 133 S. W. 281; Goodwin v. Koonce, 130 S. W. 620.

[14] 3. Appellant Padgett insists that the attempted sale by Clark to him operated under the act of 1907 as an absolute and ipso facto forfeiture of the land in question, and that, as the substitute purchaser becomes the original purchaser, he acquired title to the land in controversy by reason of his purchase from the state, free of all claims against said land. We think this contention is correct. The statute of 1905 provided that, "A purchaser shall not transfer his land prior to his actual settlement thereon and evidence of that fact is filed herein; provided any attempt to so transfer by deed, bond for title or other agreement, shall operate as a forfeiture of the land to the fund to which the same belonged, together with all the payments made thereon; and when sufficiently informed of the facts which operate as a forfeiture, the commissioner shall note the fact of forfeiture upon the application and proceed to place the land on the market by notice to the proper county clerk and advertisement in the manner provided for canceled leases."

Our Supreme Court in the case of Good v. Terrell, 100 Tex. 275, 98 S. W. 641, construing this provision of the act of 1905, said: "The effect of this provision is to make a sale not only before settlement but also before the affidavit thereof (which was the evidence required by law of the settlement) shall be filed in the general land office * * * work a forfeiture ipso facto, and to make it the duty of the commissioner to declare the forfeiture when informed of the fact. The words are too plain to admit of any other construction. * * * Whatever may have been the motive the law is so written, and it must be given effect—the statute is imperative."

The act of 1907, § 6d, provides that, "One who hereafter buys land on condition of settlement shall not sell any part of such purchase prior to one year after the date of award of the home tract." The act of 1905 provided that no such sale should be made until the applicant had made his settlement and filed proof of same in the land office. The act of 1907, § 6e, provides that, "One who may hereafter purchase land * * * on condition of settlement in the counties named in section 6a of this act (El Paso is one of said counties) * * * who executes a transfer contrary to the provisions of this act * * * shall forfeit the land and all payments made thereon to the fund to which the land belongs; and when the commissioner shall be sufficiently informed of the facts which operate as a forfeiture, he shall cancel the award or sale by noting the act of forfeiture on the obligation, and mail notice of that fact to the proper county clerk."

It will be seen that the language declaring a forfeiture for a violation of the act of 1907 is practically the same as that used in the act of 1905, and under the authority of Good v. Terrell, supra, we hold that, when Clark executed a deed to Padgett within less than 12 months after the sale to him by the state, the award to him became thereby ipso facto forfeited, and the land reverted to the state free of any incumbrance which Clark may have placed upon the same. Tillman v. Erp, 121 S. W. 551. The undisputed evidence shows that the land in controversy was awarded to W. G. Clark August 30,

1907; that said Clark and wife on May 4, 1908, conveyed said land to Padgett; that said Padgett applied to purchase said land on May 4, 1908, and that the same was awarded to him on his said application; and that the sale to Padgett is now in good standing. Such being the fact, Padgett acquired the land as a purchaser from the state, free of all incumbrances.

For the reasons herein stated, we overrule the motion of appellant Clark for a rehearing, and grant a rehearing as to appellant Padgett, and, as to him, the judgment of the trial court is reversed and rendered in his favor.

Affirmed in part, and in part reversed and rendered.