WEBB et al. v. REYNOLDS.

(Court of Civil Appeals of Texas. Ft. Worth. July 5, 1913. Rehearing Denied Oct. 18, 1913.)

1. JUDGMENT (§ 654*)—FINAL JUDGMENT — WHAT CONSTITUTES.

Where the order dismissing the petition, made by the judge who first tried the action, was not final because not disposing of all the parties, it must be treated as an interlocutory order which could be set aside by a subsequent judge who would have the same powers as if the original judge was sitting, and therefore such dismissal lacks the conclusiveness of a judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1165; Dec. Dig. § 654.*]

2. APPEAL AND ERROR (§ 1074*)—REVIEW — HARMLESS ERROR.

Where the judge who first tried the action dismissed the complaint, the failure of a third judge who entertained an amended complaint, substantially the same, to set aside the dismissal was not reversible error, for the rendering of a judgment in favor of the plaintiff was in effect a setting aside of such order; the same being true of an interlocutory order entered by a second judge which required the addition of other parties defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4248–4252; Dec. Dig. § 1074.*]

3. JUDGES (§ 16*)—SPECIAL JUDGES—MODE OF SELECTION.

While Rev. Civ. St. 1911, art. 1676, provides that, whenever a circuit judge is disqualified, he shall so certify to the Governor, who shall designate some adjoining district judge to exchange and try such case, the local bar, under article 1678, providing that whenever the judge of the court shall be absent or unable or unwilling to hold court the practicing lawyers of such court may elect a special judge, may select a special judge where the Governor fails to designate a district judge to try the case in which the regular district judge was disqualified.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 46, 53–59; Dec. Dig. § 16.*]

4. JUDGES (§ 16*)—SPECIAL JUDGES — SELECTION—PERSONS ENTITLED TO VOTE.

Under Rev. Civ. St. 1911, art. 1678, providing that the practicing lawyers of a court may, where the district judge is unable or unwilling to act, select one of their number as special judge, members from adjoining counties who practice in that district and are present have the same rights to vote as the resident lawyers.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 46, 53–59; Dec. Dig. § 16.*]

5. JUDGES (§ 16*)—SPECIAL JUDGES — SELECTION.

Where a member of the bar is selected by a majority of the practicing lawyers, as a special judge, the fact that he voted for himself will not invalidate the election.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 46, 53–59; Dec. Dig. § 16.*]

6. OFFICERS (§ 30*) — SPECIAL JUDGES — ELIGIBILITY—HOLDING OTHER OFFICE.

A member of the bar, who is also a member of the Legislature, is not thereby disqualified from acting as special judge in case of the disability or disqualification of the regular judge.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 37–43; Dec. Dig. § 30.*]

7. BILLS AND NOTES (§ 485*) — ACTIONS — PLEADING—OWNERSHIP.

The petition, in an action upon a vendor's lien note, declared that the note was executed by defendants as a part of the consideration for the tract of land conveyed to them by the payee, and that it was indorsed by the administrator of the payee to one S., without recourse, who assigned it to plaintiff; that by an agreement between the administrator of the payee and the defendant the note in controversy was deposited in a bank to be held in trust until the amount of an alleged shortage in the land could be ascertained, whereupon the note should be credited therefor. The answer set up the agreement mentioned, although there was a special answer duly verified alleging that the assignment by the administrator was made to defeat defendant's rights against the administrator who was appointed in a foreign state and had not qualified under the laws of Texas and so could not sue in the courts of that state. Held that, notwithstanding Rev. Civ. St. 1911, art. 3480, providing that no sale of any property belonging to an estate shall be made without an order of court, and despite the verified denial of the bona fides of the assignment of the note, proof by plaintiff of the execution of the note, coupled with the introduction of the note itself in evidence bearing the assignments, is in view of article 1906, requiring denials of the execution of any written instrument upon which a pleading is founded to be verified, sufficient to show a transfer of all title of the original payee to the indorsee of the administrator; the answer not denying the execution of the written instrument whereby defendant recognized the administrator's title.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1542–1554; Dec. Dig. § 485.*]

8. APPEAL AND ERROR (§ 877*)—PERSONS ENTITLED TO ALLEGE ERROR.

Where plaintiff's indorser was made a party defendant to the suit and failed to appeal, the makers of the note could not complain of the judgment finding that the indorser had transferred his interest to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. § 877.*]

Conner, C. J., dissenting.

Appeal from District Court, Shackelford County; R. B. Humphrey, Special Judge.

Action by B. F. Reynolds against S. Webb and others. From a judgment for plaintiff, defendants appeal. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

A. A. Clarke, J. A. King, and R. L. Allen, all of Albany, for appellants. B. F. Thorp, of Throckmorton, and Stephens & Miller, of Ft. Worth, for appellee.

DUNKLIN, J. S. Webb and L. H. Hill have appealed from a judgment in favor of B. F. Reynolds for the sum of $654.68 with foreclosure of vendor's lien on certain land. The suit was upon a promissory note executed by appellants in favor of Laura G. H. Torrence as a part of the consideration for a tract of land conveyed to appellants by the payee and indorsed to W. H. Stevens without recourse by A. C. Hensley, "administrator of the estate of L. G. H. Torrence, deceased." The note was one of a series of vendor's lien notes executed by Webb and Hill to the payee mentioned, who contemporaneously therewith conveyed to the makers the land upon which a foreclosure was sought. B. F. Reynolds, the plaintiff in the case, alleged in his petition that he had acquired the notes from the indorsee Stevens; that all of the notes of the series had been paid except the one in suit; that by agreement between Hensley, the administrator, and defendant S. Webb the note in controversy was deposited in the First National Bank of Albany to be held by the bank in trust until the amount of shortage claimed by Webb in the land conveyed should be determined and that when determined the note should be credited therefor. The alleged agreement was in writing, signed by the administrator, reciting that Webb had acquired all interest Hill owned in the land, and that since the date of the deed to Webb and Hill it had been discovered that the tract conveyed contained less than the 320 acres warranted by the vendor, and the agreement was made an exhibit to the petition. This agreement further stipulated that no demand should be made for payment of the note in controversy until the amount of such shortage, if any, should be determined. Plaintiff alleged further that the administrator had on divers occasions endeavored to induce Webb, who is now the sole owner of the land, to ascertain the amount of shortage claimed by him and had offered to pay all expenses necessary to determine the boundary lines between the lands conveyed and other adjoining tracts, but that these offers had been refused by Webb, and that by such refusal he had breached the contract. It was further alleged in plaintiff's petition that that agreement was entirely for the accommodation of defendants and without any consideration to support it; that the administrator did not know of any shortage in the land and did not believe that there was any. By supplemental petition filed subsequently to the answer of Webb and Hill, this plea of failure of consideration was repeated and duly verified by plaintiff.

To this petition defendants addressed four special exceptions: First, that it did not sufficiently appear from the petition that plaintiff was the owner of the note; second, that the petition contains a plea of failure of consideration of the contract attached thereto and that such plea was not verified as required by law; third, that the petition did not show that the note sued on was due; and, fourth, that the suit was premature in that the petition contained no allegation that the amount of shortage admitted in the contract to exist had ever been ascertained and contained no showing that it was the duty of defendant Webb to ascertain that shortage rather than the duty of the plaintiff. Defendants further pleaded specially that the shortage in the tract of land above mentioned was due to encroachments made upon the tract by adjoining landowners who were claiming portions of it adversely. All of defendant's exceptions were sustained by Hon. Cullen C. Higgins, judge of the Thirty-Ninth judicial district and acting judge of the Forty-Second judicial district, in which district this suit was pending; Hon. Thos. L. Blanton, the regular judge of the Forty-Second district, having recused himself on account of relation to some of the parties and having exchanged districts with Hon. Cullen C. Higgins. When these exceptions were sustained, plaintiff declined to amend, whereupon the suit was dismissed. Plaintiff then prosecuted an appeal to this court, which was dismissed for want of final judgment as the same failed to dispose of some of the parties made defendants in the suit. A mandate was then issued from this court announcing its decision. Thereafter plaintiff filed his first amended original petition, which was substantially to the same effect as his original petition. Appellants then filed a motion to dismiss the amended petition upon the ground that the order of Judge Higgins sustaining the special exceptions had not been set aside but was still in full force and effect. This motion was presented to Judge Thomas, who was then presiding judge of the court, and was by said judge overruled, to which ruling appellants excepted. Thereupon defendants filed their first amended original answer urging the same exceptions to the amended original petition as had been formerly sustained and further excepting to the petition on the ground that plaintiff, having elected to stand upon the previous order sustaining the exceptions and having prosecuted an appeal therefrom, was bound by such election. These exceptions were presented to Judge Thomas, who reserved his decision thereon, appointed certain surveyors to survey the tract of land in controversy in order to ascertain the shortage claimed, and continued the case until the following term. At the next succeeding term, Hon. J. H. Calhoun by agreement of the parties acted as judge of the court to try the case. Judge Calhoun then overruled all the ex-

ceptions contained in the defendants' first amended original answer except the one urging the premature institution of the suit and reserved his decision upon that. This judge also appointed surveyors to survey out the land looking to a determination of the amount of shortage and continued the suit until the following term. No report of any survey of the land by any of the surveyors appointed was ever filed. At the next succeeding term of the court the case was tried before Hon. R. B. Humphrey, as special judge, and the judgment from which this appeal is prosecuted was rendered upon that trial; Judge Humphrey having been elected as special judge by the lawyers present in the court. The record contains no formal order by any of the different judges who sat in the case specifically vacating the order made by Judge Higgins sustaining the four special exceptions noted already. Nor does the record contain any nunc pro tunc order showing a disposition of all the parties at the time the suit was dismissed by Judge Higgins.

It appears that counsel for appellants questioned the validity of the election of Judge Humphrey; that for this reason they refused to appear when the case was called for trial by him; and that no one appeared upon the trial but plaintiff and his counsel. Hence appellants did not invoke a ruling by Judge Humphrey upon any of the exceptions contained in their amended answer and introduced no evidence upon the trial and objected to none introduced by plaintiff; but thereafter they filed a motion in arrest of the judgment upon grounds which will be hereinafter noted.

[1] By the first assignment appellants insist that the former judgment from which the former appeal was prosecuted was in fact a final judgment, but that by an oversight of the draftsman the judgment entered omitted any disposition of the rights of some of the parties defendants; that after the termination of that appeal plaintiff failed to take any steps to procure an order nunc pro tunc making said judgment final and thereby bound himself to an election to abide by the order of Judge Higgins sustaining the defendants' special exceptions to plaintiff's petition which has never been vacated. Predicated upon these contentions it is insisted that Judge Thomas erred in overruling defendants' motion to dismiss plaintiff's first amended original petition filed after the former appeal was dismissed, and that Judge Humphrey erred in overruling defendants' motion in arrest of judgment, in which motion the same facts were urged as one of the grounds for arresting the judgment rendered by Judge Humphrey.

The record before us fails to show that when Judge Higgins entered the order of dismissal he in fact disposed of all the parties to the suit; hence it does not appear that plaintiff could have procured the entry of a nunc pro tunc order such as mentioned above. In the absence of any showing that a final judgment had been rendered, no error appears in the actions of Judges Thomas and Humphrey in treating the order of Judge Higgins sustaining defendants' special exceptions as interlocutory only, and we must so consider it here. Their orders must be considered from the same viewpoint as if Judge Higgins had continued to preside in the court and had made the orders himself. The former order of Judge Higgins being interlocutory only, there was nothing to prevent him or either of the succeeding judges from vacating it, and an unsuccessful appeal from that order could not estop plaintiff from afterwards invoking a vacation of it.

[2] While Judge Humphrey did not specifically set aside that order, yet his failure so to do would not be reversible error, since the judgment rendered by him necessarily had that effect, and no assignment is presented challenging the correctness of his action in thus overruling appellants' special exceptions to plaintiff's petition upon the merits of those exceptions; the only point made being the alleged estoppel against plaintiff noted above. For the same reasons it was not reversible error for Judge Humphrey to proceed with the trial of the case on the merits without specifically setting aside the former interlocutory order of Judge Calhoun requiring plaintiff to make other parties defendant and appointing surveyors to survey the land and determine the amount of the alleged shortage in the tract.

[3] Prior to the election of the special judge, Hon. Thomas L. Blanton, the regular judge of the court had certified to the Governor his disqualifications to try the case. Appellants insist that under those conditions the remedy provided by article 1676, Revised Civil Statutes 1911, for supplying another judge to try the case was exclusive, and that, even though the election of Judge Humphrey as special judge of the court was a valid election and authorized him to transact other business, yet he had no jurisdiction to try this suit.

Article 1676 reads: "Whenever any case or cases, civil or criminal, are pending in which the district judge is disqualified from trying the same, no change of venue shall be made necessary thereby; but the judge presiding shall immediately certify that fact to the Governor, whereupon the Governor shall designate some district judge in an adjoining district to exchange and try such case or cases, and the Governor shall also notify both of said judges of such order; and it shall be the duty of said judges to exchange districts for the purpose of disposing of such case or cases, and, in case of sickness or other reasons rendering it impossible to exchange, then the parties or their counsel shall have the right to select or agree

upon an attorney of the court for the trial thereof."

Article 1678 reads: "Whenever, on the day appointed for a term of the district court, or at any time before the expiration of the term, or the completion of all the business of the court, the judge thereof shall be absent, or shall be unable or unwilling to hold the court, there shall thereby be no failure of the term, and no failure to proceed with the business of the court, but the practicing lawyers of such court present thereat may proceed to elect from among their number a special judge of said court, who shall proceed to hold said court and conduct the business thereof, and shall have all the power and authority of the judge of said court, during such continued absence or inability, and until the completion of any business begun before such special judge."

We are of the opinion that, in the absence of an appointment by the Governor of some judge to exchange districts with Judge Blanton for the purpose of trying this case, a special judge elected under article 1678 would have authority to try it. The language of the latter article is clearly sufficiently comprehensive to confer upon the special judge that power, and under the circumstances stated we perceive no reason for holding otherwise.

[4] Appellants further insist that the election of Judge Humphrey as special judge was null and void, and hence that the judge so elected had no jurisdiction to hear and determine the suit. The following facts are urged as a basis for this contention: The special election was held over the protest of the lawyers who resided at Albany and who were present at the time of the election and who refused to participate therein. Practicing attorneys from two of the adjoining counties were present and participated in the election, and all of their votes were for the special judge, and they were the only votes cast. The fact that they were not resident attorneys we do not think would be any inhibition against their votes for the special judge, as the only qualification under the statute for the right to vote is that the lawyer voting must be a practicing lawyer of the court, and there is nothing in the record to show that those voting in the election were not practicing lawyers of that court.

[5] We are of the opinion further that the fact that Judge Humphrey voted for himself did not invalidate his election as all the votes cast were in his favor and as there is nothing in the statute which prohibited him from voting for himself.

[6] It is insisted further that, as Judge Humphrey at the time of his election was a member of the Legislature, that fact served to disqualify him to act as special judge. Counsel recognize that the decisions of our Supreme Court in Roundtree v. Gilroy, 57 Tex. 176, Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, 5 Am. St. Rep. 53, and State v.

Brinkerhoff, 66 Tex. 45, 17 S. W. 109, are seemingly against this contention, but they consider those decisions unsound and against public policy. The purport of their contention is that the acceptance by Judge Humphrey of the office of special judge necessarily vacated the office then held by him as a member of the Legislature of the state; that the vacation of a public office in that manner should not be left to implication but "should be open, aboveboard, and known to all people concerned." However meritorious this contention might seem, the decisions cited preclude us from giving it effect.

[7] By their sixth assignment appellants insist that the judgment is erroneous: First, because there is no evidence in the record showing that Laura G. H. Torrence, the payee of the note, is dead, nor of any order of any probate court appointing A. C. Hensley administrator of her estate, nor of any order of the probate court authorizing the administrator to sell or otherwise dispose of the note; and, second, because there is no evidence in the record showing any transfer of the note to plaintiff by W. H. Stevens, to whom the note appears to have been indorsed by A. C. Hensley, as administrator of the payee's estate. Article 3480, Revised Statutes 1911, reads: "No sale of any property belonging to an estate shall be made by an executor or administrator without an order of the court authorizing the same." A statement of facts is found in the record from which it appears that plaintiff introduced in evidence a deed of date December 17, 1906, conveying to defendants Webb and Hill the land alleged in plaintiff's petition and reciting the purchase-money notes given therefor by defendant, one of which is the note in suit. There was also introduced in evidence the note alleged in plaintiff's petition acknowledging a vendor's lien on said land and bearing the indorsement: "Pay to the order of W. H. Stevens without recourse. A. C. Hensley, Administrator of the Estate of L. G. H. Torrence, Deceased." The statement of facts further shows that the plaintiff testified that he was the owner of the note; that before he purchased it he was attorney for the administrator of the estate of L. G. H. Torrence, deceased; that while so representing his client he, as attorney for the administrator, repeatedly offered to institute suit for the defendants and in their names against the owners of land adjoining the land upon which the note was given for the purpose of determining the shortage claimed by Webb and Hill in the land conveyed to them by deed referred to above and to credit the note for whatever shortage appeared in the tract after the termination of such litigation and further offered for his client to pay all costs of said litigation, but that defendants had refused such offers. He further testified that as the title to the land was in the name of the defendants, and as they refused to

permit their names to be used in the proposed suits, he had been unable to determine the shortage, if any existed. He further testified that the contract executed by the administrator and the defendants attached to the petition was a correct copy of the original.

Article 588, Revised Civil Statutes 1911, reads: "When a suit shall be instituted by an assignee or indorsee of any written instrument, the assignment or indorsement thereof shall be regarded as fully proved, unless the defendant shall deny in his plea that the same is genuine, and moreover shall file, with the papers in the cause, an affidavit stating that he has good cause to believe, and verily does believe, that such assignment or indorsement is forged."

The following special answer duly verified by defendant Webb was filed:

"That the transfer of this note to plaintiff by A. C. Hensley, administrator of the Laura G. H. Torrence estate, was a subterfuge and fraud in law; there was no consideration for said transfer; that the same was not made in good faith but was made for the purpose of depriving the defendant S. Webb of any legal and equitable rights he may have against said Torrence estate. That said administration on the said Torrence estate was taken out in another and different jurisdiction than under the laws of the state of Texas, to wit, in the state of Kentucky, where said administration is still pending, and that, before an administrator can sue in this state for property or anything of value belonging to his estate, he must first take out letters of administration under the laws of this state, and that A. C. Hensley, as administrator, has failed and refused to qualify in Texas as the law directs as administrator of said estate, and that plaintiff is not the bona fide owner of said note and cannot maintain this suit against these defendants.

"The State of Texas, County of Shackelford. I solemnly swear that I am one of the defendants in the above-styled and numbered cause, and that the matters stated herein, in the above and foregoing plea, are true. S. Webb.

"Sworn to and subscribed before me on this the 4th day of May, 1911. W. B. King, Clk. Dist. Ct. Shackelford County, Texas."

But there was no verified answer denying the execution of the written agreement attached to the plaintiff's petition as a part thereof and alleged to have been executed by the defendants and by A. C. Hensley, administrator. In fact this agreement was specially pleaded by the defendants also as a basis for their plea in abatement of the suit. The effect of that agreement was to recognize the administrator as the holder of the legal title to the note and as having authority to collect it and stipulated that Webb would pay same to the administrator in the event it should be determined that the alleged shortage in the land did not exist. Nor was there any verified plea by appellant questioning the validity of the indorsement of the note to W. H. Stevens by the administrator, although such assignment of the note to Stevens and transfer from Stevens to plaintiff was alleged in the petition in addition to another allegation that plaintiff acquired the note from the administrator.

The majority are of the opinion that under the pleadings the evidence recited above was sufficient to show a transfer of all title originally owned by the payee of the note to the indorsee W. H. Stevens and also to show that plaintiff acquired the title of the indorsee. Schauer v. Beitel, 92 Tex. 601, 50 S. W. 931; Garrett v. Findlater, 21 Tex. Civ. App. 635, 53 S. W. 839 (as applicable to the possession of the administrator); Revised Statutes, art. 1906, subds. 8, 9; 3 Wigmore on Evidence, § 1960; 4 Wigmore on Evidence, § 244.

[8] As W. H. Stevens, the indorsee of the note, was made a party defendant in the suit, and as judgment was rendered in favor of the plaintiff against him for title thereto, from which judgment said Stevens has prosecuted no appeal, appellants could not in any event be heard to complain of lack of evidence to prove that the title acquired by W. H. Stevens, indorsee of the note, from the administrator was duly transferred to the plaintiff.

Accordingly the sixth assignment of error is overruled by the majority, and the judgment is affirmed.

CONNER, C. J. (dissenting). Disregarding questions not likely to arise on another trial, I think the judgment should be reversed because of a want of the proper allegation and proof of any right in appellee to recover upon the note sued upon. As alleged and affirmatively shown on the face of appellee's petition, the note in question was the second one in a series of four notes executed by appellant and L. H. Hill on the 2d day of December, 1906, made payable to the order of Laura G. H. Torrence on the 17th day of December, 1907, 1908, 1909, and 1910, respectively; that after their execution, and before the payment of any of these notes, Laura G. H. Torrence died and A. C. Hensley was appointed administrator of her estate, the regularity of the appointment not being questioned; that afterwards, to wit, on the 8th day of June, 1909, as shown by copy thereof set forth in appellee's petition, said administrator and appellant Webb entered into a written agreement which recites that a shortage in the survey of land for which the notes had been given existed and that notes 1, 3, and 4 of the series had been paid by Webb, and which specifically provides that note No. 2 of the series (the one upon which appellee sues), together with the agreement, should be deposited with the First

National Bank of Albany, Tex., in escrow, and that no demand for the payment of said note No. 2 should be made until said shortage should be ascertained to the satisfaction of the parties, neither the party who was to ascertain the shortage, nor the time, nor the method of ascertainment being specified. The appellee alleged that he represented the administrator in this adjustment of the controversy existing with reference to the shortage, and that said note No. 2 and said agreement had been "put up with the First National Bank, one of the defendants, to be held until said claimed shortage was determined." The First National Bank of Albany, Tex., was sued among other defendants, against which the prayer was that said bank be required "to produce note No. 2 sued on in this case and held by said defendant in trust in court that the same may be merged into a judgment against defendant S. Webb and L. H. Hill." Appellee alleged the ownership of the note in question in general terms but specially pleaded his title thus: "That said Hensley, administrator aforesaid, has sold and conveyed to plaintiff said note No. 2 of said series described above, also all of the rights, choses in action, liens, and all other rights that said estate of Laura G. H. Torrence had in said note No. 2 of said series for a valuable consideration, which said conveyance is in writing and signed and acknowledged by said administrator of the estate of Laura G. H. Torrence, deceased, whereby," etc. The written transfer of the note, rights, choses in action, etc., thus alleged to have been transferred was not made part of the petition, nor is there any allegation of any kind or character that the sale of the note by the administrator to any person had been ordered by the court as specifically required in Revised Statutes, art. 3480, quoted by the majority. Nor is there any allegation that such sale was ever approved or ratified by the court administering the estate of said Laura G. H. Torrence. Nor is there a particle of evidence from which such order or ratification may be implied. It further affirmatively appears from the petition that appellee's purchase, if any, was after the maturity of the note and with full knowledge of its deposit in the First National Bank; it being alleged, as stated, that appellee acted in that settlement as the attorney for the administrator. The only proof offered or relied upon in support of the appellee's allegations of title is his own testimony to the effect that he was the owner of the note sued upon and the fact that he introduced the note in evidence. In this condition of the allegation and proof, I think the plaintiff wholly failed to make out his case. The administrator in making the sale had no authority whatever in the absence of authority given by the court. He was but an instrument or agent of the court, and authority to make the sale should have been made to affirmatively appear both by pleading and proof, and no presumptions can be indulged in favor of appellee under the circumstances and allegations shown in this case. See Matula v. Freytag, 101 Tex. 357, 107 S. W. 536; Berry v. Hindman, 129 S. W. 1181; Ball v. Collins (Sup.) 5 S. W. 622; Teague v. Swasey, 46 Tex. Civ. App. 151, 102 S. W. 458; Cruse v. O'Gwin, 48 Tex. Civ. App. 48, 106 S. W. 757, and authorities there cited; Terrell v. Martin, 64 Tex. 121; Hendrix v. Richards, 57 Neb. 794, 78 N. W. 378; Slusher v. Hammond, 94 Iowa, 512, 63 N. W. 185; McDuffie v. McIntyre, 11 S. C. 551, 32 Am. Rep. 500; Bates v. Dunham, 58 Iowa, 308, 12 N. W. 309.

A careful examination of the authorities cited, which for want of time will not be here reviewed, must bring the conclusion that the title to property of an estate is in the heirs to be administered by the court for their benefit and for the benefit of creditors of the estate, and that a transfer of such property by the administrator, save in the mode pointed out in the law, is void and affords no defense to a suit by the heirs. It may be and is ordinarily true that possession of a promissory note affords presumptive evidence of title in the party producing it, but I do not think such presumption can be indulged under circumstances as here shown. As here shown it affirmatively appears that the bank was in actual possession and that the transfer upon which the plaintiff relies was by an entire stranger to the title. He was neither payee in the note nor heir of such payee, nor was there, as already stated, any order of the probate court authorizing or confirming the sale. Appellee's statement that he was the "owner" of the note was but a mere conclusion and cannot, if intrinsically without merit, be considered as supporting the judgment; it not being the introduction but its merit which gives weight to evidence. See Henry v. Phillips, 151 S. W. 533; 14 Encyc. of Evidence, p. 102, par. 6, and authorities there cited in the note; Sharp v. Baker, 22 Tex. 306. The fact that appellee introduced the note in controversy in evidence upon the trial, if under other circumstances affording presumptive evidence of ownership, is not here entitled to any consideration in view of the fact recited in the judgment that the note had been produced and deposited in the files of the court by the First National Bank.

I therefore conclude that article 1906, Revised Statutes, and authorities cited in conjunction therewith have no application, and that the judgment in this case should be reversed, and the cause remanded, regardless of the complaints made of the election of the special judge and of the question whether, upon the face of appellee's petition, he showed that the note sued upon had matured by the ascertainment of the amount of deficiency in the survey referred to.